FILED

February 25 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0055

DA 15-0055

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 44

MONTANA CANNABIS INDUSTRY ASSOCIATION,
MARC MATTHEWS, SHELLY YEAGER, JESSE RUMBLE,
JOHN STOWERS, M.D., POINT HATFIELD,
and CHARLIE HAMP,

        Plaintiffs, Appellees, and Cross-Appellants,

   v.

STATE OF MONTANA,

        Defendant, Appellant, and Cross-Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. DDV-2011-518
                Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Timothy C. Fox, Montana Attorney General; J. Stuart Segrest (argued),
           Matthew T, Cochenour, Assistant Attorneys General, Helena, Montana

      For Appellees:

           James H. Goetz (argued), J. Devlan Geddes, Goetz, Baldwin & Geddes,
           P.C., Bozeman, Montana

Argued and Submitted:  November 4, 2015

Decided:  February 25, 2016

Filed:

                                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The State of Montana (State) appeals an order of the First Judicial District Court, Lewis and Clark County, granting a permanent injunction against the enforcement of certain provisions of the 2011 Montana Marijuana Act §§ 50-46-301 to -344, MCA (Act). Montana Cannabis Industry Association, Mark Matthews, Shelly Yeager, Jesse Rumble, John Stowers, M.D., Point Hatfield, and Charlie Hamp (collectively "Plaintiffs") cross-appeal the District Court's refusal to enjoin other provisions of the Act. We address the following issues on appeal:

> *1. Whether the District Court erred in determining that the Act's provision requiring the Department of Public Health and Human Services (Department) to notify the Board of Medical Examiners of any physician who certifies 25 or more patients in a year for medical marijuana (§ 50-46-303(10), MCA) fails rational basis review.*
>
> *2. Whether the District Court erred in determining that the Act's commercial prohibitions (§ 50-46-308(3), (4), (6)(a),(b), MCA) fail rational basis review.*
>
> *3. Whether the District Court erred in applying strict scrutiny review to the Act's provision prohibiting advertising by providers of medical marijuana (§ 50-46-341, MCA), thereby concluding that the provision unconstitutionally infringes free speech.*
>
> *4. Whether the District Court erred in determining that the Act's provision prohibiting probationers from becoming registered cardholders for medical marijuana use (§ 50-46-307(4), MCA) withstands a facial challenge under rational basis scrutiny.*
>
> *5. Whether the District Court erred in determining that the Act's provision allowing warrantless inspections of medical marijuana providers' businesses by the Department and law enforcement agencies (§ 50-46-329, MCA) comports with the U.S. and Montana Constitutions' guarantees against unreasonable searches.*

¶2 We affirm in part and reverse in part.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    This is the State's second appeal from the First Judicial District Court's injunctions preventing implementation of certain provisions of the Act. *Montana Cannabis Industry Association v. State*, 2012 MT 201, 366 Mont. 224, 286 P.3d 1161 (hereafter *MCIA I*). The Act repealed the 2004 Medical Marijuana Act (2004 Act)—which was established by voter initiative (I-148)—and replaced it with a new statutory framework. The Act contains multiple provisions that limit both the eligibility of patients to qualify for its protections and the activities of medical professionals and providers of marijuana for medical purposes.

¶4    In the first case, the District Court preliminarily enjoined several of the Act's provisions, including: its ban on the commercial sale of medical marijuana; its ban on provider advertising; its authorization of warrantless inspections; and the 25-patient physician review trigger. In its first order, the court reasoned that those provisions implicated Plaintiffs' fundamental constitutional rights, triggering strict scrutiny analysis. The State agreed to a preliminary injunction against several of the challenged provisions pending consideration of the constitutional merits, but appealed the injunction against the commercial ban on the ground that the District Court erred in applying strict scrutiny analysis to the provisions in the absence of an infringement on fundamental rights.

¶5    In *MCIA I*, we determined that the commercial ban did not implicate the fundamental rights to employment, to health, or to privacy, and that Plaintiffs had no

fundamental right to medical marijuana. Accordingly, we reversed and remanded the case to the District Court to apply rational basis scrutiny. *MCIA I*, ¶ 35.

¶6    Following remand, Plaintiffs moved the District Court for a Temporary Restraining Order, Preliminary Injunction and Order to Show Cause. On October 26, 2012, the District Court granted a Temporary Restraining Order and set a Preliminary Injunction Hearing.[1] At that hearing, Plaintiffs presented testimony from several witnesses to support their contention that many medical marijuana users and providers would suffer irreparable harm if certain provisions of the Act did not remain preliminarily enjoined. Several witnesses who suffered from debilitating medical conditions testified that they had very negative experiences with prescription drugs and that medical marijuana was the only treatment that provided them effective relief from their conditions. Providers of medical marijuana testified that without the injunction, it would not be feasible for them to continue their medical marijuana businesses.

¶7    The State urged the District Court to deny the preliminary injunction and to extend the temporary restraining order for a period to allow the Legislature to consider further amendments to the Act. To support its argument, the State referenced several abuses that occurred under the 2004 Act and that were discussed during the June 2011 preliminary injunction hearing. The State referenced telemedicine (the practice of some physicians to certify patients without ever actually seeing the patient), traveling caravans, and a disproportionate number of medical marijuana users in the "chronic pain category" who

---

[1] The parties agreed that the District Court could consider testimony and evidence submitted at the June 2011 hearing on Plaintiffs' previous motion for preliminary injunction.

4

falsified or exaggerated their need for medical marijuana. The State also emphasized that one-third of medical marijuana users were growing their own supply at that time.

¶8 Following the hearing, on January 16, 2013, the court issued an order maintaining its preliminary injunction against the Act's commercial prohibitions. The court concluded that "[p]roperly registered and eligible cardholders will be injured or irreparably harmed if the Court does not preserve the status quo . . . [because] cardholders will be unable to grow their own medical marijuana or will be unable to obtain it from a provider." Thereafter, the parties filed cross-motions for summary judgment. The District Court heard oral argument on the summary judgment motions on April 15, 2014.

¶9 On January 6, 2015, the District Court issued a Corrected Order on Motions for Summary Judgment. In its decision, the court reviewed the commercial ban and the 25-patient review trigger for a rational basis, and concluded that both provisions were invalid. The court applied strict scrutiny to the advertising prohibition, and enjoined it on the basis that the prohibition impermissibly restricted content-based political and educational speech. The District Court declined to enjoin the warrantless inspection provision and the ban on access to medical marijuana by probationers. The court entered its final judgment on January 8, 2015.

¶10 The State appeals the injunctions against the commercial ban, the 25-patient physician review trigger, and the advertising ban. Plaintiffs cross-appeal the District Court's decision to uphold the warrantless inspection provision and the ban on probationer use. This Court heard oral argument on November 4, 2015.

**STANDARDS OF REVIEW**

¶11    We review summary judgment rulings de novo, applying the criteria set forth in M. R. Civ. P. 56. *Walters v. Flathead Concrete Prods.*, 2011 MT 45, ¶ 8, 359 Mont. 346, 249 P.3d 913. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Walters*, ¶ 8. If there are no genuine issues of material fact, we review for correctness a district court's conclusion that the moving party is entitled to judgment as a matter of law. *Zinvest, LLC v. Hudgins*, 2014 MT 201, ¶ 11, 376 Mont. 72, 330 P.3d 1135.

¶12    This Court exercises plenary review of constitutional issues. *Big Sky Colony, Inc. v. Mont. Dep't of Labor and Indus.*, 2012 MT 320, ¶ 16, 368 Mont. 66, 291 P.3d 1231 (citation omitted). The constitutionality of a statute is presumed, "unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt." *Powell v. State Comp. Fund.*, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877. If any doubt exists, it must be resolved in favor of the statute. *Powell*, ¶ 13. The party challenging the constitutionality of a statute bears the burden of proof. *Big Sky Colony*, ¶ 16.

**DISCUSSION**

¶13    We begin by acknowledging the proverbial "elephant in the room." Marijuana is a Schedule I Controlled Substance under the federal Controlled Substances Act, 21 U.S.C. § 812, under which its cultivation and distribution are illegal. 21 U.S.C. §§ 841(a)(1), 844(a). In this case, no challenge is brought to the Act on the ground that it is preempted by federal law, U.S. Const. art. VI, cl. 2, and the State expressly disclaimed such a

6

challenge during oral argument. In the face of action in numerous states to legalize marijuana for medical or even recreational purposes,[2] the United States Department of Justice has issued guidance (discussed below) concerning enforcement priorities in an apparent effort to minimize conflict with state actions while maintaining the primacy of federal law. The Act is the Montana Legislature's attempt to navigate shifting public policy toward marijuana in the absence of Congressional action to resolve state and federal differences.[3] We are not called upon in this case to review the broad question of Montana's authority to act on the subject of medical marijuana. Rather, we address only the question whether, having taken action on the subject, the Legislature's means of addressing this conflict are permissible under defined standards of constitutional analysis.

---

[2] Alaska Stat. §§ 17.37.010 *et seq.* (medical), §§ 17.38.010 *et seq.* (recreational); Ariz. Rev. Stat. §§ 36-2801 *et seq.* (medical); Cal. Health & Safety Code §§ 11362.5 *et seq.* (medical); Colo. Rev. Stat. §§ 12-43.3-101 *et seq.* (medical), §§ 12-43.4-101 *et seq.* (recreational); Conn. Gen. Stat. §§ 21a-408 *et seq.* (medical); Del. Code Ann. tit. 16, §§ 4901A *et seq.* (medical); D.C. Code §§ 7.1671.01 *et seq.* (medical); Haw. Rev. Stat. §§ 329-121 *et seq.* (medical); 410 Ill. Comp. Stat. Ann. 130/1 *et seq.* (medical); Me. Rev. Stat. tit. 22, §§ 2421 *et seq.* (medical); Md. Code Ann. Health-Gen §§ 13-3301 *et seq.* (medical); Mass. Ann. Laws ch. 94C, §§ Appx. 1 *et seq.* (medical); Mich. Comp. Laws Serv. §§ 333.26421 *et seq.* (medical); Minn. Stat. Ann. §§ 152.27 *et seq.* (medical); Nev. Rev. Stat. §§ 453A.___ [2015 ch. 401, § 29] *et seq.* (medical); N.H. Rev. Stat. Ann. §§ 126-X:2 *et seq.* (medical); N.J. Stat. Ann. §§ 24:6I-1 *et seq.* (medical); N.M. Stat. Ann. §§ 26-2B-1 *et seq.* (medical); N.Y. CLS Pub. Health Law §§ 1004.1 *et seq.* (medical); Or. Rev. Stat. §§ 475.300 *et seq.* (medical), Or. Rev. Stat. §§ ___.___ [2015 c.1, § 3] *et seq.* (recreational); R.I. Gen. Laws §§ 21-28.6-1 *et seq.* (medical); Vt. Stat. Ann. tit. 18 §§ 4472 *et seq.* (medical); Wash. Rev. Code §§ 69.51A *et seq.* (medical), Wash. Rev. Code §§ 69.50.360, 69.50.363, 69.50.66, 69.50.401 (recreational).

[3] A number of bills have been introduced during recent Sessions of Congress, none of which have moved forward. *E.g.*, Respect State Marijuana Laws Act of 2015, H.R. 1940, 114th Cong. (2015); States' Medical Marijuana Property Rights Protection Act, H.R. 262, 114th Cong. (2015); Marijuana Businesses Access to Banking Act of 2015, H.R. 2076, 114th Cong. (2015). Respect State Marijuana Laws Act of 2013, H.R. 1523, 113th Cong. (2013); National Commission on Federal Marijuana Policy Act of 2013, H.R. 1635, 113th Cong. (2013); States' Medical Marijuana Property Rights Protection Act, H.R. 6335, 112th Cong. (2012); States' Medical Marijuana Patient Protection Act, H.R. 1983, 112th Cong. (2011).

¶14    Plaintiffs allege denial of equal protection and due process rights under article II, sections 4 and 17 of the Montana Constitution.  Plaintiffs bring their constitutional claims as facial challenges to certain statutes within the Act.  Analysis of a facial challenge to a statute differs from that of an as-applied challenge.  *See e.g.*, *State v. Whalen*, 2013 MT 26, ¶¶ 20-22, 368 Mont. 354, 295 P.3d 105.  In order to prevail on their facial challenges, Plaintiffs must show that "no set of circumstances exists under which the [challenged sections] would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987)).  *See also In re Marriage of K.E.V.*, 267 Mont. 323, 336, 883 P.2d 1246, 1255 (1994) (Trieweiler, J., concurring and dissenting) (citation and internal quotation marks omitted) (noting that "a facial challenge to a legislative act is of course the most difficult challenge to mount successfully, since the challenger must establish that no circumstances exist under which the act would be valid").

*Equal Protection*

¶15    The principal purpose of the Montana Constitution's Equal Protection Clause, art. II, § 4, is to ensure that Montana's citizens are not subject to arbitrary and discriminatory state action.  *Powell*, ¶ 16.  When presented with an equal protection challenge, "we first identify the classes involved and determine whether they are similarly situated." *Rohlfs v. Klemenhagen*, *LLC*, 2009 MT 440, ¶ 23, 354 Mont. 133, 227 P.3d 42.  If we determine that the challenged statute creates classes of similarly situated persons, we next decide

8

whether the law treats the classes in an unequal manner. *Caldwell v. MACo Worker's Comp. Trust*, 2011 MT 162, ¶ 16, 361 Mont. 140, 256 P.3d 923. Thus, to state a meritorious equal protection claim, Plaintiffs must demonstrate that "the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." *Bustell v. AIG Claims Serv. Inc.*, 2004 MT 362, ¶ 20, 324 Mont. 478, 105 P.3d 286 (citing *Powell*, ¶ 22).

¶16    A law may create a classification even if the classification is not expressed "on the face" of the statute. *State v. Spina*, 1999 MT 113, ¶ 85, 294 Mont. 367, 982 P.2d 421 (citing John E. Nowak, et al., *Constitutional Law*, 600 (2d ed. 1983)). "[A] law may contain no classification, or a neutral classification, and be applied evenhandedly. Nevertheless the law may be challenged as in reality constituting a device designed to impose different burdens on different classes of persons." *Spina*, ¶ 85 (citing Nowak, *supra*, at 600). Plaintiffs argue that the Act creates different classifications:

> 1.  The class of persons with debilitating medical conditions:  (a) some of whom have conditions for which marijuana is the single most effective medical treatment; (b) others who effectively may be treated with other pharmaceutical drugs.
>
> 2.   Among those who are solely or optimally treated with marijuana: (a) those who have the physical ability and the means, including suitable space, to grow their own; (b) those who do not.

The District Court concluded that the Act "do[es] impose different burdens on different classes of persons as described by [Plaintiffs] and, therefore, do[es] create a classification."

9

¶17 We concluded in *Caldwell* that a statute denying rehabilitation benefits to workers' compensation claimants based on a claimant's age-based eligibility for social security benefits created two classes of similarly-situated claimants because it distinguished by age between workers who had similar work-related injuries. *Caldwell*, ¶ 18. The statutes at issue here concern a group of persons who all suffer from a debilitating medical condition but are distinguished by the manner in which they may obtain relief. Some may be treated effectively with pharmaceutical drugs; for others, marijuana is the sole or most effective treatment. The identifying factor that distinguishes them is the method of treatment. As we recognized in *MCIA I*, the Act regulates a person's right to a particular treatment for his or her medical condition. *MCIA I*, ¶ 24. We observed in *Caldwell* that whether the challenged statute creates a discriminatory classification is informed by the statute's purpose. *Caldwell*, ¶ 19. In *Caldwell*, as in *Reesor v. Montana. State Fund*, 2004 MT 370, 325 Mont. 1, 103 P.3d 1019, age was "the only identifiable distinguishing factor between the two classes;" we concluded in both cases that age was "unrelated to a person's ability to engage in meaningful employment." *Caldwell*, ¶ 19; *Reesor*, ¶ 12. In contrast, we concluded in *Wilkes v. Montana State Fund*, 2008 MT 29, 341 Mont. 292, 177 P.3d 483, that where "actual wages" was the single distinguishing factor between workers' compensation claimants, that was a "fundamental distinction" between the two classes sufficient to defeat similarity for purposes of the plaintiff's equal protection claim. *Wilkes*, ¶ 20. We reasoned that one stated purpose of the Workers' Compensation Act was that "the

10

wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of work-related injury or disease." *Wilkes*, ¶ 26 (internal quotation marks omitted) (quoting § 39-71-105(1), MCA).

¶18 The reasoning in *Wilkes* applies here. One stated purpose of the Act is to "provide legal protections to persons with debilitating medical conditions who engage in the use of marijuana to alleviate the symptoms of the debilitating medical condition." Section 50-46-301(2)(a), MCA. There is no need for the Legislature to provide legal protections to persons using prescribed pharmaceutical medication. "The distinguishing factor between the two classes, [their use of medical marijuana], plainly relates to the underlying justification of the statute." *Wilkes*, ¶ 20. We conclude that the distinctions in regulation of different substances for medical treatment does not create two legitimate classes for an equal protection challenge because the single identifying factor—use of a substance prohibited by federal law—is a fundamental difference that sufficiently distinguishes the two classes to render them dissimilar.

*Substantive Due Process*

¶19 Although there is considerable overlap between an equal protection analysis and a substantive due process analysis, "each Clause triggers a distinct inquiry." *Evitts v. Lucey*, 469 U.S. 387, 405, 105 S. Ct. 830, 841 (1985). Equal protection "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable," while due process "emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same

11

situation may be treated." *Evitts*, 469 U.S. at 405, 105 S. Ct. at 841 (quoting *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S. Ct. 2437, 2443 (1974)). "For example, if a state prohibited all persons from purchasing or using a certain drug or medicine, a challenge to that law would be based on substantive due process." 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.4(a) at 824 (5th ed. 2012). Because Plaintiffs essentially claim that the Act's regulation of marijuana for medical purposes "restrict[s] the freedom of all persons in society without a constitutionally legitimate justification," their challenges appropriately are analyzed under the due process clause, Montana Constitution Article II, Section 17. Rotunda & Nowak, supra, at 824.

¶20    Substantive due process also reflects a principle distinct from that protected by procedural due process:

> If an individual asserts that the government must provide him with some type of procedural safeguards before the government takes an interest from him, he must demonstrate that the interest constitutes life, liberty, or property. . . . There is no need to define life, property or liberty for substantive due process analysis . . . . All laws might be said to restrict [an] individual's use of property rights or personal liberty, in the sense of restricting which actions the individual can take in society. Laws regulating property or liberty that do not restrict the exercise of a fundamental right should be upheld unless the person attacking the law can overcome the presumption of constitutionality and demonstrate that the law is not rationally related to a legitimate interest.

Rotunda & Nowak, supra, § 15.5 at 847-48.

¶21    This Court analyzes substantive due process in the same fashion. Where a fundamental right is not implicated, "[s]ubstantive due process analysis requires a test of

the reasonableness of a statute in relation to the State's power to enact legislation." *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 33, 353 Mont. 265, 222 P.3d 566 (internal quotation marks omitted) (quoting *Powell*, ¶ 29). "Since the State cannot use its power to take an unreasonable, arbitrary or capricious action against an individual, a statute enacted by the legislature must be reasonably related to a permissible legislative objective in order to satisfy guarantees of substantive due process." *Satterlee*, ¶ 33 (internal quotation marks omitted) (quoting *Powell*, ¶ 29). *See Newville v. State Dep't of Family Servs.*, 267 Mont. 237, 249, 883 P.2d 793, 800 (1994). We analyze substantive due process claims by examining (1) whether the legislation in question is related to a legitimate governmental concern, and (2) whether the means chosen by the Legislature to accomplish its objective are reasonably related to the result sought to be attained. *Walters*, ¶ 18.

¶22 In determining whether the statute's objective is legitimate, we examine the legislation's purpose, whether expressly stated or otherwise. *Satterlee*, ¶¶ 34, 37 (examining the purpose of worker's compensation laws to determine whether they serve a permissible legislative objective); *Goble v. Mont. State Fund*, 2014 MT 99, ¶ 41, 374 Mont. 453, 325 P.3d 1211 (examining the stated policy provisions of the worker's compensation system to determine whether it serves a legitimate governmental interest). The legislation's purpose "does not have to appear on the face of the legislation or in the legislative history, but may be any possible purpose of which the court can conceive."

13

*Walters*, ¶ 28 (internal quotation marks omitted) (quoting *Satterlee*, ¶ 34). *See Kottel v. State*, 2002 MT 278, ¶ 55, 312 Mont. 387, 60 P.3d 403.

¶23 In this case, we need not surmise possible purposes for the legislation because the Act makes explicit several purposes on its face. *See Walters*, ¶¶ 31-32; *Goble*, ¶ 41. Section 50-46-301, MCA, provides that the purposes of the Act are to:

> (a) provide legal protections to persons with debilitating medical conditions who engage in the use of marijuana to alleviate the symptoms of the debilitating medical condition;
>
> (b) allow for the limited cultivation, manufacture, delivery, and possession of marijuana as permitted by this part by persons who obtain registry identification cards;
>
> (c) allow individuals to assist a limited number of registered cardholders with the cultivation and manufacture of marijuana or marijuana-infused products;
>
> (d) establish reporting requirements for production of marijuana and marijuana-infused products and inspection requirements for premises; and
>
> (e) give local governments a role in establishing standards for the cultivation, manufacture, and use of marijuana that protect the public health, safety, and welfare of residents within their jurisdictions.

Section 50-46-301(2), MCA. In addition, the legislative history demonstrates that the Act was enacted in response to the Legislature's concern about a number of abuses that occurred following passage of the 2004 Act. As we noted in *MCIA I*, the 2011 Act was passed "in response to a drastic increase of caregivers and medical marijuana users." *MCIA I*, ¶ 2. The goal of the Act, according to its sponsor, was "to repeal a system that is obviously broken, cleanse the system out, and then restore the laws of the State of Montana in a fashion that will recognize the intent of the Montana voters in 2004."

14

*Hearing on SB 423 Before the S. Jud. Comm.* 62nd Leg. Reg. Sess. 07:46-08:01 (Mont. 2011).

¶24    Plaintiffs argue that they produced evidence proving the Legislature's premises to be unfounded.  They maintain that the District Court's ruling correctly parsed the Act and struck down provisions that were shown not to be needed to address the Act's legitimate objectives, while leaving intact other provisions that more effectively accomplished the Act's purposes.  Citing *Brewer v. Ski-Lift*, 234 Mont. 109, 115, 762 P.2d 226, 230 (1988), *superseded by statute on other grounds as stated in Kopekin v. Moonlight Basin Mgmt., LLC*, 981 F. Supp. 2d 936, 941 (Mont. 2013), Plaintiffs argue that the District Court properly enjoined provisions of the Act that are "needlessly overbroad and go far beyond the stated purposes of the statute."

¶25    *Brewer*, however, says nothing about consideration of post-enactment evidence to prove a statute's basis irrational.  In concluding that the statute at issue in that case lacked a rational basis, this Court relied on the absence of reasons in the legislation to impose a strict assumption of risk standard on skiers in contradiction to state comparative negligence statutes that applied to other inherently dangerous activities.  *Brewer*, 234 Mont. at 115, 762 P.2d at 230-31.  We applied well-established principles of constitutional analysis:  "'The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose . . . .'"  *Brewer*, 234 Mont. at 112, 762 P.2d at 229 (quoting Laurence H. Tribe, *American Constitutional Law*, 1440 (2d ed. 1988)).  Likewise, Plaintiffs' reliance on *Conant v. Walters*, 309 F.3d

15

629 (9th Cir. 2002), is misplaced because that case involved consideration of empirical evidence to support an injunction, not a facial challenge to the constitutionality of a statute.

¶26 As in *Conant*, the District Court properly considered the Plaintiffs' evidence in the context of their motions for preliminary injunctive relief. Section 27-19-201, MCA; *Citizens for Balanced Use v. Maurier*, 2013 MT 166, ¶ 28, 370 Mont. 410, 303 P.3d 794 (noting that a district court must consider "the equities of all interests involved"). But in the context of the constitutional analysis of the Act, "[o]ur role is not to second guess the prudence of a legislative decision." *Satterlee*, ¶ 34.

> As with all legislative compromises, the [Act] is not infallible and the legislative decisions made in adopting the [Act] are subject to honest debate. Nevertheless, once a statute has been duly approved by the legislative branch, this Court's role is not one of second guessing the prudence of the conclusions reached.

*Satterlee*, ¶ 37. Rational basis is the most deferential standard of review. *See e.g.*, *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83, 108 S. Ct. 1645, 1653 (1988); *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314, 96 S. Ct. 2562, 2567 (1976). Under the due process clause, "the law need not be in every respect logically consistent with its aims to be constitutional." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-88, 75 S. Ct. 461, 464 (1955). In light of the Act's stated purposes, unless Plaintiffs establish that the statutes are unreasonable or arbitrary, the Legislature's judgment should not be disturbed. *Walters*, ¶ 18.

16

¶27 As we noted in *Walters*, it may be "easy to opine that the Legislature could have done better" in providing for available means of accessing treatment once it determined to authorize marijuana use for certain medical conditions; the law, however, "requires us to recognize that 'such a debate involves issues and decisions about public policy that are clearly of the sort much better suited to the halls of the legislature.'" *Walters*, ¶ 33 (quoting *Satterlee*, ¶ 38).

¶28 We conclude that the Act's purposes serve a legitimate state interest. The Legislature was highly cognizant of the fact that marijuana remains a Schedule I controlled substance, illegal for all purposes, under federal law. 21 U.S.C. §§ 812, 841, 845. The Legislature also took notice of the United States Attorney General's direction to federal prosecutors that "[t]he prosecution of significant traffickers of illegal drugs, including marijuana, and the disruption of illegal drug manufacturing and trafficking networks continues to be a core priority in the Department's efforts against narcotics and dangerous drugs . . . ." Memorandum from David W. Ogden, Deputy Attorney General, U.S. Dep't of Justice, to Selected United States Attorneys, *Investigations and Prosecutions in States Authorizing the Medical Use of Marijuana* 1 (Oct. 19, 2009). (hereafter "Ogden Memorandum").[4] The Attorney General issued a new directive in August 2013 that refined and stated more clearly the objectives of particular importance to the United States government. They include, among numerous others, "[p]reventing

---

[4] Indeed, while the Act was under consideration, federal law enforcement agencies conducted raids on medical marijuana facilities in multiple Montana communities, and the United States commenced prosecution against numerous individuals involved in the operations.

revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels; [and] [p]reventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity." Memorandum from James M. Cole, Deputy Attorney General, U.S. Dep't of Justice, to All United States Attorneys, *Guidance Regarding Marijuana Enforcement*, 1-2 (Aug. 29, 2013) (hereafter "Cole Memorandum"). While Plaintiffs emphasize that the Ogden and Cole Memoranda encourage federal prosecutors to decline prosecution of state-regulated marijuana dispensaries in most circumstances, "it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime." *Feinberg v. Comm'r of Internal Revenue*, 808 F.3d 813, 816 (10th Cir. 2015). As such, there is no basis for concluding that informal agency memoranda alter the U.S. government's authority to enforce federal law. Moreover, "[t]here's always the possibility, too, that the next (or even the current) Deputy Attorney General could displace th[o]se memoranda at anytime." *Feinberg*, 808 F.3d at 816. After this case was argued, Plaintiffs called the Court's attention to a recent Congressional Appropriations Act that prohibits the Justice Department from spending funds that would prevent states—including Montana—from implementing their own laws authorizing the use, distribution, possession, or cultivation of medical marijuana. Consolidated Appropriations Act, 2016, Pub. L. 114-113, § 542 Div. B, tit. V, 223 (2015). We take judicial notice of this action pursuant to M. R. Evid. 202(b). While the

18

measure does evince developing attitudes in Congress, the substantive criminal prohibitions in federal law remain intact.

¶29 The Legislature is presumed to be cognizant of guiding constitutional principles, under which federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Legislature sought to resolve prior abuses and to avoid entanglement with federal law while continuing to "provide legal protections" to qualified persons who engage in the medical use of marijuana, and to "allow individuals to assist a limited number" of qualified persons in obtaining marijuana or marijuana-infused products. Section 50-46-301(2)(a), (c), MCA. The careful regulation of access to an otherwise illegal substance for limited use by persons for whom there is little or no other effective alternative serves a legitimate state objective.

¶30 Having determined that the Act serves a legitimate objective, we proceed to consider whether the statutes are reasonably related to achieving that objective. *Powell*, ¶ 29. A statute that is unreasonable, arbitrary, or capricious and bears no reasonable relationship to a permissible government interest offends due process. *Goble*, ¶ 40. In contrast, a statute that is neither unreasonable nor arbitrary "when balanced against the purpose of the legislature in enacting the statute" does not offend due process. *State v. Egdorf*, 2003 MT 264, ¶ 19, 317 Mont. 436, 77 P.3d 517. This deferential standard demonstrates the Court's recognition that we "have only the power to destroy, not to

19

reconstruct." *Stratemeyer v. Lincoln Cnty.*, 259 Mont. 147, 153, 855 P.2d 506, 510 (1993) (internal quotation and citation omitted).

¶31     In economic regulation cases, there are "good reasons for judicial self-restraint if not judicial deference to legislative judgment." *Stratemeyer*, 259 Mont. at 152-53, 855 P.2d at 510 (internal quotation marks and citation omitted). "The legislature is simply in a better position to develop the direction of economic regulation . . . ." *Stratemeyer*, 259 Mont. at 153, 855 P.2d at 510. Because of this, we are "to assume that the Legislature was in a position and had the power to pass upon the wisdom of the enactment." *Rohlfs*, ¶ 31. "[W]e cannot strike down [a statute] as a violation of substantive due process simply because we may not agree with the legislature's policy decisions." *Satterlee*, ¶ 34. "What a court may think as to the wisdom or expediency of the legislation is beside the question and does not go to the constitutionality of a statute." *Rohlfs*, ¶ 31. Moreover, even if a court believes that statutes aimed at achieving the State's interest could have been implemented "with greater precision," those statutes likely still will withstand rational basis review because "rational distinctions may be made with substantially less than mathematical exactitude." *Ward v. Johnson*, 2012 MT 96, ¶ 23, 365 Mont. 19, 277 P.3d 1216 (internal quotation marks omitted) (citing *Burlington N. Ry. v. Ford*, 504 U.S. 648, 653, 112 S. Ct. 2184, 2187 (1992) (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 2517 (1976))).

¶32     This restraint on judicial interference with legislative policy judgments has added significance here, because the Legislature took the unusual step in the Act of imposing

upon itself an obligation to continue examination of the issue and further consideration of changes in light of the evolving nature of the issue. Section 50-46-343, MCA, provides:

> [t]he children, families, health, and human services interim committee shall provide oversight of the department's activities related to registering individuals pursuant to [the Act] and of issues related to the cultivation, manufacture, and use of marijuana . . . . The committee shall identify issues likely to require future legislative attention and develop legislation to present to the next regular session of the legislature.

¶33 We turn now to the application of the foregoing standards to the specific statutes at issue to determine whether they are "arbitrary or unreasonable," or whether they instead are "rationally related to the recognized legitimate government objectives of the Act." *Walters*, ¶ 34.

¶34 *1. Whether the District Court erred in determining that the Act's provision requiring the Department to notify the Board of Medical Examiners of any physician who certifies 25 or more patients in a year for medical marijuana (§ 50-46-303(10), MCA) fails rational basis review.*

¶35 Under § 50-46-303(10)(a), MCA, the Department "shall provide the board of medical examiners with the name of any physician who provides written certification for 25 or more patients within a 12-month period. The board of medical examiners shall review the physician's practices in order to determine whether the practices meet the standard of care." Section 50-46-303(10)(b), MCA, requires that, "[t]he physician whose practices are under review shall pay the costs of the board's review activities." The District Court preliminarily enjoined these provisions on stipulation of the parties; the State withdrew from that stipulation following *MCIA I.*

21

¶36 The District Court concluded that the 25-patient review trigger was not rationally related to the Act's goals. The court relied in part on testimony from Ian Marquand, who appeared on behalf of the State Board of Medical Examiners. Marquand testified that there had been almost no reported problems with medical marijuana certifications following a standard of care directive issued by the Board in 2010 that disallowed certification exclusively by telemedicine. The court also relied on testimony from Roy Kemp, administrator of the Department's medical marijuana registry program, who testified that "he knew of no rationale justifying the 25-patient limit." Marquand's and Kemp's testimony, coupled with "the fact that this provision has never been in effect," led the District Court to conclude that the 25-patient review trigger "is not rationally related—indeed not necessary at all—to the goals of the medical marijuana laws."

¶37 The State argues that the District Court erred in its application of rational basis standards because it considered circumstances regarding the lack of problems with medical marijuana certifications following entry of the first preliminary injunction. The State contends that the court instead should have considered the "flagrant abuses" that were occurring in 2011, when the Legislature passed the Act. The State references testimony before a legislative conference committee to argue that the Legislature "realized that the abuse of the 'chronic pain' category was best controlled by increasing physician accountability." The State also emphasizes the testimony of Dr. Stowers, one of the named plaintiffs, in the June 2011 preliminary injunction hearing. The State contends that Dr. Stowers acknowledged "serious problems with doctor

22

recommendations under the old law." The State asserts that the 25-patient review trigger is rationally related to the Act's goals because it creates a standard of care to ensure a bona fide physician-patient relationship and then "ensur[es] the standard is being followed by requiring review after a doctor certifies 25 or more patients in a year."

¶38 We agree that the District Court incorrectly applied rational basis scrutiny to conclude that the 25-patient review trigger is not rationally related to the Act's goals. The District Court based its conclusion on a finding that the 25-patient review trigger was "not necessary" to the goals of the medical marijuana laws. The question under rational basis review, however, is not whether the provision is necessary, but whether the provision is arbitrary or whether it has a "reasonable relation to some permitted end of governmental action . . . ." *Powder River Cnty. v. State*, 2002 MT 259, ¶ 79, 312 Mont. 198, 60 P.3d 357 (citations omitted). Although any limit the Legislature chooses may be attacked as an arbitrary number, we conclude that a 25-patient review trigger is not arbitrary in light of the statute's objectives. The legislative history and testimony from the June 2011 preliminary injunction hearing show that there indeed were problems with over-certification under the 2004 Act. To address this problem, the Legislature created an objective standard of care for marijuana certification—set forth in § 50-46-302(2)(c), (18), MCA,—and the 25-patient review trigger. There is no arbitrary punishment for a doctor who certifies 25 or more patients because the Board of Medical Examiners is not required to suspend or otherwise take remedial action against the doctor under the statute.

23

Section 50-46-303(10)(a), MCA. Section 50-46-303(10)(a), MCA, requires only that the board review the doctor's practices to determine whether they meet the standard of care.

¶39    While a 25-patient review trigger may or may not be the most effective way to prevent over-certification, it is beyond our purview to second-guess the "wisdom or expediency of the legislation." *Rohlfs*, ¶ 31. And while there may not be precise statistical evidence that 25 patients is an ideal number to signal potential abuses, "rational distinctions may be made with substantially less than mathematical exactitude." *Ward*, ¶ 23 (citations omitted). The review trigger also addresses the federal government's expectation for "strong and effective regulatory and enforcement systems that will address the threat [that State marijuana laws] could pose to public safety, public health, and other law enforcement interests." Cole Memorandum at 2. While a different scheme for preventing over-certification would have been permissible, the Legislature's policy choice in this instance is not constitutionally invalid. *See Ward*, ¶ 24.

¶40    Finally, as noted above, the Legislature will continue to monitor its medical marijuana restrictions and recommend changes where circumstances warrant. Section 50-46-343, MCA. The 25-patient review trigger has never been in effect. Therefore, if the review provision turns out to be onerous or unworkable, the issue may be brought to the Legislature for consideration.

¶41    Because the 25-patient review trigger is rationally related to the legitimate state interest of carefully regulating the distribution of medical marijuana while allowing its limited use for people with debilitating medical conditions, we hold that the District

24

Court erred in determining that the 25-patient review trigger failed rational basis review. Accordingly, we vacate the District Court's injunction against § 50-46-303(10), MCA, and uphold that provision of the Act.

¶42    *2.  Whether the District Court erred in determining that the Act's commercial prohibitions (§§ 50-46-308(3), (4), (6)(a),(b), MCA) fail rational basis review.*

¶43    The District Court enjoined several provisions of the Act that prohibit commercial trade in marijuana and marijuana products.  The Act accomplishes its commercial restraint through two primary mechanisms:  a three-patient limit for providers of marijuana products and a restriction against remuneration to providers.  Section 50-46-308, MCA, provides:

> (3)(a)(i) A provider or marijuana-infused products provider may assist a maximum of three registered cardholders.
>
> (ii) A person who is registered as both a provider and a marijuana-infused products provider may assist no more than three registered cardholders.
>
> (b) If the provider or marijuana-infused products provider is a registered cardholder, the provider or marijuana-infused products provider may assist a maximum of two registered cardholders other than the provider or marijuana-infused products provider.
>
> (4) A provider or marijuana-infused products provider may accept reimbursement from a cardholder only for the provider's application or renewal fee for a registry identification card issued under this section.
>
> .   .   .
>
> (6) A provider or marijuana-infused products provider may not:
>
> (a) accept anything of value, including monetary remuneration, for any services or products provided to a registered cardholder;
>
> (b) buy or sell mature marijuana plants, seedlings, cuttings, clones, usable marijuana, or marijuana-infused products.

25

Sections 50-46-308(3), (4), (6)(a), (b), MCA. The District Court analyzed the preceding sections as a whole, collectively referring to them as the "commercial provisions." The court concluded that Plaintiffs met their initial burden by showing that the sections created distinct classes, and that the burden then shifted to the State to justify the distinction. The court found that one of the Act's purposes is to "afford access to marijuana for persons with seriously debilitating conditions." The court concluded that the commercial prohibitions "work in opposition to the goals of the statutes and the policy of the state" because the "compassionate purposes" of the statute are lost by the prohibition. According to the District Court, no provider "has come forward willing to invest the time, money, and labor to provide medical marijuana for free." Therefore, the court concluded that the commercial prohibitions make it nearly impossible for people with the most serious debilitating conditions to get access to marijuana because the prohibitions essentially require them to grow their own marijuana—which they often are physically or financially unable to do. Based on these findings, the court held that there was no rational basis for the Act's commercial prohibitions.

¶44 The District Court also addressed one of the State's justifications for the commercial prohibitions—that marijuana is illegal under federal law. The court concluded that federal illegality cannot be a justification for the commercial prohibitions because the Act itself is "contrary" to federal law. To further support its conclusion, the court emphasized that the State had not provided evidence to show that certain abuses, prior to the Act's passage, still existed. Based on this alleged lack of evidence, the court

26

concluded that the commercial prohibitions were irrelevant because "the medical marijuana laws, as enjoined . . . have accomplished their purpose."

¶45     The State argues that the commercial prohibitions "easily pass" rational basis review for three reasons.  First, the State claims that the court assumed an incorrect purpose for the Act because the explicit purpose of allowing "'limited' cultivation cannot be read to include affording commercial access—certainly not under rational basis review." The State argues that the court inappropriately ruled on the "wisdom or expediency of the legislation" rather than providing the State the benefit of the doubt and assuming "any possible purpose" that may provide a legitimate interest.  Second, the State claims that the District Court erred in refusing to consider federal illegality as a possible legitimate state interest for the commercial prohibitions.  The State asserts that it has a legitimate interest in "lessening the conflict between a state law, its citizens, and federal law," and that "taking the money out" of medical marijuana means that the federal government is less likely to get involved.  Third, as discussed above, the State argues that the District Court erred by considering changed circumstances or the effects of the court's preliminary injunctions.  The State suggests that current circumstances support prohibition in any event because the growing number of cardholders evidences an increased potential for abuse.

¶46     Plaintiffs argue that the commercial prohibitions are an irrational response by the State to "perceived abuses."  According to Plaintiffs, "the State cannot, on the one hand, declare marijuana legally a medicine, but, on the other hand, arbitrarily discriminate as to

27

who may access it." Plaintiffs contend that the State failed to provide "conceivable justifications" for the three-patient limit in its response to Plaintiffs' Interrogatories. Plaintiffs respond to the State's claimed justifications by arguing that: 1) selective scattered sound bites from legislative debates do not support rational basis because they are not authoritative and are "too general and not supported by evidence;" 2) according to Marquand's testimony, there have been no problems with traveling caravans, doctor certification, and telemedicine since 2011; and 3) the federal ban is equivocal in that the State cannot definitively say whether there truly is a danger of federal prosecution because the U.S. Department of Justice, in the Ogden and Cole Memoranda, have "made it clear it will not interfere with the states as long as the states carefully monitor their laws."

¶47 Our review of the commercial prohibitions focuses on whether they are rationally related to the State's legitimate interest in carefully regulating access to an otherwise illegal substance for serious medical conditions. We analyze the three-patient limit separately from the remuneration restrictions.

*Three-Patient Limit: § 50-46-308(3), MCA*

¶48 The three-patient limit is rational so long as it is not a capricious or arbitrary means of accomplishing the Act's legitimate purpose. *Powder River Cnty.*, ¶ 79. As noted previously, the Act was passed "in response to a drastic increase of caregivers and medical marijuana users." *MCIA I*, ¶ 2. Because of this concern, one of the Act's explicit purposes is to "allow individuals to assist a limited number of registered

28

cardholders with the cultivation and manufacture of marijuana or marijuana-infused products." Section 50-46-301(c), MCA.

¶49 The Legislature determined that placing a limit on the number of registered cardholders a provider may assist serves the objectives of keeping marijuana away from large-scale manufacturing operations, making it less appealing to major traffickers. This relates directly to the federal government's goals of preventing marijuana sales revenue from going to criminal enterprises and of keeping state-authorized marijuana activity from being used as a cover for other drug trafficking. Plaintiffs conceded during oral argument that, in light of these concerns, the State "probably could" set limits on the number of cardholders a provider could assist. The Legislature conceivably could have fixed a different number. But in the face of marijuana's outright prohibition under federal law, and the U.S. government's avowed intention to investigate and prosecute marijuana offenses where it finds "an important federal interest," Cole Memorandum at 4, it is not irrational for the Legislature to put mechanisms in place to limit its commercial profitability. Whether a limit of just three patients is the best or the most effective means of achieving the State's legitimate purpose is not for the Court to judge. *Rohlfs*, ¶ 31. Furthermore, it is outside our authority to opine on what number—if not three—would pass constitutional muster; "mathematical exactitude" is not required. *Ward*, ¶ 23 (citations omitted). Finally, the Legislature has committed itself to reviewing such matters if the three-patient limit proves unworkable. Section 50-46-343, MCA.

29

¶50    Because the three-patient limit is reasonably related to the legitimate governmental concern of affording a means of treatment while avoiding large-scale commercial marijuana production, we hold that the District Court erred in concluding that the three-patient limit fails rational basis scrutiny. *Walters*, ¶ 18. Accordingly, we vacate the District Court's injunction against § 50-46-308(3) MCA, and we uphold this subsection of the Act.

*Remuneration Restrictions: § 50-46-303(4), (6)(a), (b), MCA*

¶51    In analyzing the remuneration restrictions for due process concerns we consider whether the restrictions bear a fair and substantial relation to the object of the legislation. *Powell*, ¶ 29. The State asserts that the purpose of the remuneration restrictions is to protect Montana from federal involvement by avoiding large-scale commercial marijuana operations. According to the State, the remuneration restrictions are rationally related to that goal.

¶52    Plaintiffs respond by pointing to Kemp's testimony that if the three-patient limit and the remuneration restrictions were implemented, "that alone would completely disable it and invalidate the program." While the initial choice to regulate is one for the legislative branch, Plaintiffs argue, "the Act's attempt to prohibit all commercial traffic is completely out of proportion to any reasonable assessment of potential abuse."

¶53    Legislative history indicates that the purpose of imposing restrictions against financial compensation of providers was to "keep the money out" of the marijuana business—presumably, to meet the federal government's objectives of preventing

30

large-scale marijuana production operations that could serve as a front for other illegal drug trafficking and could funnel revenues to cartels, gangs, and criminal enterprises. While this is a legitimate objective, we must be able to ascertain a rational relationship between a complete prohibition against financial compensation and the objectives the Legislature sought to achieve. *Walters*, ¶ 18. We conclude that the remuneration restrictions fail this inquiry.

¶54 We first observe that the Act does not prohibit physicians from being compensated for their services or expenses when they examine a patient and provide written certification for the patient's medical use of marijuana products. In addition, the State has not cited, and the Court has not found, any other service or product sanctioned by state law that the Legislature has mandated be provided for free. Although the State argues that the remuneration restrictions do effectively "keep the money out," the restrictions are at odds with the Legislature's stated purpose of allowing the limited possession and use of marijuana by persons with debilitating medical conditions in order to alleviate their symptoms. Section 50-46-301(2)(a), (b), MCA. More, the restriction is contrary to the purpose of keeping marijuana revenues out of the hands of criminals because it drives the business of medical marijuana to the black market. The Act allows marijuana to be used medically with approval by a physician. The complete prohibition against compensation is invidious because medical marijuana, even when approved by a physician, would have no commercially available source of supply.

31

¶55 Finally, this provision also implicates equal protection concerns. *See Evitts*, 469 U.S. at 405, 105 S. Ct. at 841; *Ross*, 417 U.S. at 609, 94 S. Ct. at 2443 (recognizing that concerns of both clauses may be implicated in some cases and offer support for the Court's conclusions). "A classification is not reasonable if it . . . 'imposes peculiar disabilities upon [a] class of persons arbitrarily selected from a larger number of persons, all of whom stand in the same relation to privileges conferred or disabilities imposed.'" *Kottel v. State*, 2002 MT 278, ¶ 55, 312 Mont. 387, 60 P.3d 403 (quoting *Leuthold v. Brandjord*, 100 Mont. 96, 105, 47 P.2d 41, 45 (1935)). To withstand rational basis scrutiny, a legislative classification must rest upon a "real difference" and some reasonable consideration of difference or policy. *Powder River Cnty.*, ¶ 79. As between all users of medical marijuana, the remuneration provision imposes a peculiar disability upon those unable to provide for themselves. To prohibit all compensation arbitrarily sets apart the patient who is unable to produce a medical marijuana product for her own use; this is not encompassed within any of the Act's legitimate objectives and is not based on reasonable consideration of differences between people with debilitating medical conditions.

¶56 Accordingly, we conclude that the absolute prohibition against remuneration is not reasonable "when balanced against the purpose of the [L]egislature in enacting the [Act]." *Egdorf*, ¶ 19. We uphold the District Court's permanent injunction against the remuneration restrictions, § 50-46-308(4), (6)(a), (b), MCA, and declare that those

provisions are invalid as violative of the equal protection and due process clauses of the Montana Constitution.

¶57 *3. Whether the District Court erred in applying strict scrutiny review to the Act's provision prohibiting advertising by providers of medical marijuana (§ 50-46-341, MCA), thereby concluding that the provision unconstitutionally infringes free speech.*

¶58 Applying strict scrutiny, the District Court determined that the advertising prohibition violates the First Amendment. The court held that the provision restricts content-based speech because it "renders the 'playing field' for discussion of pros and cons of medical marijuana completely uneven." Additionally, the District Court concluded that the advertising prohibition is "so vague and overbroad as to be meaningless as to what it prohibits," because it leaves open the potential of banning political speech as well. The court also concluded that the statute is too narrow in that it limits only advertising by valid cardholders and because "[r]egulations which impose speech restrictions on one group are seldom upheld."

¶59 The State asserts that this Court should apply basic rules of statutory construction to conclude that the statute unambiguously bars commercial speech only, thus affording it less protection. The State's primary contention is that the District Court erred by applying strict scrutiny to the advertising ban when it should have applied the four-part commercial speech test set forth in *Central Hudson Gas & Electric v. Public Service Commission of New York*, 447 U.S. 557, 100 S. Ct. 2343 (1980). Citing *City of Great Falls v. Morris*, 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692, the State argues that the

33

court should have interpreted the statute narrowly in a way that avoids an unconstitutional interpretation.

¶60    Plaintiffs argue that the advertising ban is overbroad and implicates both political and educational speech. Plaintiffs therefore claim that the court was correct to apply strict scrutiny instead of rational basis. Plaintiffs further argue that the government failed to meet even a rational basis standard when it relied on an overly deferential interpretation of the standard and failed to provide a M. R. Civ. P. 30(b)(6) witness or other evidence to justify the ban.

¶61    The U.S. Supreme Court has defined commercial speech as an "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson*, 447 U.S. at 561, 100 S. Ct. at 2349. This definition, together with our well-established rules of statutory interpretation, guides our determination of the speech that § 50-46-341, MCA, prohibits.

¶62    In construing a statute, we are "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. "Statutory language must be construed according to its plain meaning and if the language is clear and unambiguous, no further interpretation is required." *In re Adoption of Snyder*, 2000 MT 61, ¶ 14, 299 Mont. 40, 996 P.2d 875. "[W]e construe statutes narrowly to avoid an unconstitutional interpretation if possible." *Farrier v. Teachers Ret. Bd.*, 2005 MT 229, ¶ 13, 328 Mont. 375, 120 P.3d 390.

¶63    Applying these rules of construction to § 50-46-341, MCA, we conclude that the advertising ban prohibits only commercial speech.  The statute provides:

> **Advertising prohibited.**  Persons with valid registry identification cards may not advertise marijuana or marijuana-related products in any medium, including electronic media.

Section 50-46-341, MCA.  Advertising is "[t]he action of drawing the public's attention to something to promote its sale."  *Black's Law Dictionary* 65 (Bryan A. Garner ed., 10th ed. 2014).  A product is "[s]omething that is distributed commercially for use or consumption . . . ."  *Black's Law Dictionary, supra,* at 1402.  These commonly-understood terms the statute employs are not subject to multiple interpretations.  The plain language clearly and unambiguously establishes that the statute is aimed solely at expression relating to the commercial sale of marijuana or marijuana products for use or consumption.  We would impermissibly "insert what has been omitted" to hold that the statute implicates political speech or speech pertaining to education or advocacy.  Section 1-2-101, MCA.

¶64    "Commercial speech is accorded less constitutional protection than noncommercial speech."  *Mont. Media, Inc. v. Flathead Cnty.*, 2003 MT 23, ¶ 30, 314 Mont. 121, 63 P.3d 1129 (citing *Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 506, 101 S. Ct. 2882, 2891-92 (1981)).  To determine the validity of a commercial speech restriction, we apply the factors set forth in *Central Hudson*, which do not call for strict scrutiny.  *Mont. Media, Inc.*, ¶ 31.  The *Central Hudson* factors are:  (1) the speech must concern lawful activity and not be misleading; (2) the asserted government interest must

be substantial; (3) the regulation must directly advance the governmental interest asserted; and (4) the regulation must not be more excessive than necessary to achieve its purpose. *Cent. Hudson*, 447 U.S. at 566, 100 S. Ct. at 2351.

¶65 Considering the first factor, it bears repeating that marijuana use or possession unequivocally is an unlawful activity under federal law. 21 U.S.C. §§ 812, 841, 845; *MCIA I*, ¶ 32. Federal law controls our First Amendment commercial speech analysis, U.S. Const. amend. I; *Mont. Media*, ¶ 31, and Plaintiffs rely exclusively on federal law in their argument on this issue. Congress has acted upon the subject of marijuana and made it illegal. That a person possesses or uses medical marijuana in compliance with the laws of his or her state of residence provides no defense under the federal law. *Gonzales v. Raich*, 545 U.S. 1, 29, 125 S. Ct. 2195, 2212-13 (2005). "[A]ny legislation of a State, although in pursuance of an acknowledged power reserved to it, which conflicts with the actual exercise of the power of Congress over the subject of commerce, must give way before the supremacy of the national authority." *Smith v. Ala.*, 124 U.S. 465, 437, 8 S. Ct. 564, 566 (1888); U.S. Const. art. I, § 8, cl. 3. While the states retain police power to establish and enforce laws protecting the welfare, safety, and health of the public, U.S. Const. amend. X, if Congress acts upon the same subject, "the laws of the States, in so far as they cover the same field, are superseded, for necessarily that which is not supreme must yield to that which is." *Second Emp'rs Liab. Cases*, 223 U.S. 1, 55, 32 S. Ct. 169, 177 (1912) (citations omitted).

¶66 Because federal law governs the analysis of this issue, we conclude that an activity that is not permitted by federal law—even if permitted by state law—is not a "lawful activity" within the meaning of *Central Hudson*'s first factor. As such, the advertisement of marijuana is not speech that concerns lawful activity. There is no First Amendment violation and our analysis under *Central Hudson* therefore ends here.

¶67 Section 50-46-341, MCA, limits only commercial speech. The District Court accordingly erred in applying strict scrutiny instead of the *Central Hudson* test. Section 50-46-341, MCA, does not satisfy the first factor under *Central Hudson*, and thus does not unconstitutionally infringe on First Amendment free speech rights. Accordingly, we vacate the District Court's injunction against § 50-46-341, MCA, and uphold the statute.

¶68 *4. Whether the District Court erred in determining that the Act's provision prohibiting probationers from becoming registered cardholders for medical marijuana use (§ 50-46-307(4), MCA) withstands a facial challenge under rational basis scrutiny.*

¶69 Section 50-46-307(4), MCA, prohibits probationers from becoming registered cardholders for medical marijuana: "A person may not be a registered cardholder if the person is in the custody of or under the supervision of the department of corrections or youth court." Section 50-46-307(4), MCA.

¶70 The District Court upheld § 50-46-307(4), MCA, because it was "able to perceive a substantial rational basis for th[e] provision." The court noted that probationers "routinely have several limitations on their activities and rights." While the court agreed with Plaintiffs' argument that criminal sentences should have a "nexus with the underlying offense," the court ultimately concluded that determining such a nexus

37

requires case-by-case consideration, which "raises genuine issues of material fact beyond the ability of this Court to determine on a motion for summary judgment."

¶71 The State defends the District Court's ruling, suggesting that Plaintiffs must bring any challenge to § 50-46-307(4), MCA, as applied to a particular case, rather than as a facial challenge, because there are "clearly circumstances in which the prohibition is constitutional."

¶72 Plaintiffs contend that the "blanket prohibition" on probationers receiving medical marijuana is facially invalid because "the law, on its face, classifies persons for different treatment." Plaintiffs maintain that § 50-46-307(4), MCA, undermines the purpose of the Act—to provide access to medical marijuana for those with debilitating medical conditions. Plaintiffs point out that under *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, a sentencing court may, on a case-by-case basis, impose reasonable conditions on sentences so long as the conditions have "a nexus" either to the offense or to the offender. *Ashby*, ¶ 15. This case-by-case analysis, Plaintiffs suggest, is impossible under the current statute because the ban prohibits medical marijuana in all cases for probationers. Plaintiffs argue that the "complete ban on probationers' use" should be declared unconstitutional, and that a sentencing court should consider on a case-by-case basis whether to allow marijuana use by an offender serving a suspended or deferred sentence, just as sentencing courts consider other appropriate conditions based on the characteristics of the offender and of the offense committed.

¶73    We agree with the District Court. As noted above, a facial challenge may succeed only if the challenger can establish that "no set of circumstances exists under which the [challenged legislation] would be valid." *Salerno*, 481 U.S. at 745, 107 S. Ct. at 2100. That the challenged provision "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ." *Salerno*, 481 U.S. at 745, 107 S. Ct. at 2100. Although Plaintiffs mount a facial challenge to the ban on probationer use, they recognize that a sentencing court is authorized by law to impose reasonable conditions on a sentence that the sentencing judge "considers necessary to obtain the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1), MCA. Whether a condition or restriction of a sentence bears the requisite "nexus" to the offender or to the underlying offense is a question of compliance with sentencing statutes. *Ashby*, ¶¶ 13-15. If, in a particular case, a district court imposes a sentence prohibiting medical marijuana use but the required nexus is not satisfied, an offender may be able to bring a claim that, as applied to that offender and to his or her sentence, § 50-46-307(4), MCA, is unconstitutional. Plaintiffs acknowledge that a sentencing court would have discretion, in particular cases, to prohibit an offender from using or possessing medical marijuana. In light of this concession, Plaintiffs cannot argue that the ban on probationer use is invalid under any conceivable set of circumstances. As such, § 50-46-307(4), MCA, is not facially invalid. We affirm the District Court's ruling upholding the provision prohibiting probationers from becoming registered cardholders for medical marijuana use.

39

¶74    *5.    Whether the District Court erred in determining that the Act's provision allowing warrantless inspections of medical marijuana providers' businesses by the Department and law enforcement agencies (§ 50-46-329, MCA) comports with the U.S. and Montana Constitutions' guarantees against unreasonable searches.*

¶75    The Act allows law enforcement agencies to inspect a provider's premises during normal business hours without a warrant.  Section 50-46-329, MCA, provides:

> **Inspection procedures**. (1) The department and state or local law enforcement agencies may conduct unannounced inspections of registered premises.
>
> (2) (a) Each provider and marijuana-infused products provider shall keep a complete set of records necessary to show all transactions with registered cardholders. The records must be open for inspection by the department and state or local law enforcement agencies during normal business hours.
> (b) The department may require a provider or marijuana-infused products provider to furnish information that the department considers necessary for the proper administration of this part.
>
> (3) (a) A registered premises, including any places of storage, where marijuana is cultivated, manufactured, or stored is subject to entry by the department or state or local law enforcement agencies for the purpose of inspection or investigation during normal business hours.
> (b) If any part of the registered premises consists of a locked area, the provider or marijuana-infused products provider shall make the area available for inspection without delay upon request of the department or state or local law enforcement officials.
>
> (4) A provider or marijuana-infused products provider shall maintain records showing the names and registry identification numbers of registered cardholders to whom mature plants, seedlings, usable marijuana, or marijuana-infused products were transferred and the quantities transferred to each cardholder.

¶76    In upholding this provision, the District Court relied on *New York v. Burger*, 482 U.S. 691, 107 S. Ct. 2636 (1987).  In *Burger*, the U.S. Supreme Court established a rule that administrative or regulatory inspections of "closely regulated" industries can

constitute an exception to the warrant requirement even if the inspections are conducted by law enforcement officials to uncover and use evidence of criminal behavior. *Burger*, 482 U.S. at 703-11, 107 S. Ct. at 2646-48. The District Court concluded that the marijuana industry is a closely regulated industry. The court emphasized that "possession and use of marijuana remains a crime under federal law," and that the "entire issue of marijuana use and possession generally has significant criminal overtones." Moreover, the court concluded that § 50-46-329, MCA, "carefully defin[ed]" the premises subject to inspection, thereby avoiding concerns that inspections might be too broad or intrusive.

¶77 Plaintiffs contend that the court's "lock-step adherence" to *Burger* is incorrect because 1) the search provisions relate to law enforcement functions rather than to administrative searches, and 2) Montana's privacy rights are much stronger than those implicitly found under the United States Constitution. Relying on federal law, Plaintiffs argue that the authorization for warrantless inspections is unconstitutional because there are "no administrative regulations concerning specific neutral criteria governing warrantless searches under the Act." According to Plaintiffs, the lack of a regulatory scheme makes it "abundantly clear that the so-called 'inspection' procedures of the Act are for the sole purpose of allowing law enforcement officers to develop evidence for enforcement of criminal laws." Additionally, given Montana's explicit privacy expectation, Plaintiffs argue that the State must have a compelling reason to invade someone's privacy and that it has demonstrated none. Plaintiffs assert that the State

41

"failed to provide a meaningful answer and refused to produce a [M. R. Civ. P.] 30(b)(6) witness" when Plaintiffs questioned the inspections' purposes in pre-trial discovery.

¶78 Plaintiffs' argument that marijuana is not a heavily regulated industry in Montana because there are "no regulations . . . applying to growing operations or establishing inspection procedures for medical marijuana dispensaries" overlooks that the provision has been the subject of this litigation since its enactment. Thus, there has been no opportunity for its full implementation. Further, Plaintiffs acknowledge that marijuana is classified as a Schedule I drug—the most strictly regulated classification under the Controlled Substances Act. 21 U.S.C. § 812(c). "Schedule I drugs are categorized as such because of their high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment." *Gonzales*, 545 U.S. at 14, 125 S. Ct. at 2204.

¶79 Plaintiffs' argument that the production of medical marijuana is not a closely regulated industry is in disaccord with their argument that many provisions of the Act are overly restrictive. By design, the Act distinguishes medical marijuana from other substances for which a prescription may be obtained and filled under an existing set of laws and regulations comprehensively controlling the sale and dispensing of lawful medications. Because marijuana cannot be prescribed within that regulatory framework, the Legislature imposed instead a series of restrictions to curb widespread distribution and to limit possession of the substance to individuals with debilitating medical conditions for whom there is little or no other effective treatment. Marijuana's status as a

strictly prohibited drug under federal law required the Legislature to devise a substitute method of regulation.

¶80 Although Plaintiffs eschew "lock-step adherence" to federal law, they do not develop their argument that the result would be different under a Montana constitutional privacy analysis, except to fault the State for failing "to produce a 30(b)(6) witness" to establish a compelling state interest as required by Montana Constitution Article II, Section 10. Plaintiffs cite no authority that this determination requires an evidentiary foundation.

¶81 Rather, to determine what constitutes an unlawful intrusion by the government into one's privacy, the Court considers the following factors: (1) whether the person has an actual expectation of privacy; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the state's intrusion. *State v. Therriault*, 2000 MT 286, ¶ 33, 302 Mont. 189, 14 P.3d 444. While individuals may have an actual expectation of privacy from warrantless searches, an expectation that a provider's marijuana production and distribution facilities are entitled to the same privacy protections is not one that society is willing to recognize as objectively reasonable. Indeed, it is reasonable for owners of registered premises where marijuana—a uniquely regulated substance—is cultivated, manufactured, or stored to expect those premises to be subject to inspection during normal business hours to satisfy the State's legitimate regulatory interests.

¶82 Plaintiffs' argument that the primary reason for the procedures under § 50-46-329, MCA, "is to allow for evidentiary searches for criminal enforcement purposes" is not only unsubstantiated, but also inappropriate for a facial challenge. Without any supporting evidence, Plaintiffs conclude that because Montana has no regulatory scheme regarding grow operations, "it is abundantly clear that the so-called 'inspection' procedures of the Act are for the sole purpose of allowing law enforcement officers to develop evidence for enforcement of criminal laws." This conclusory assertion does not support a holding that the inspection procedures are facially invalid. Section 50-46-329, MCA, on its face addresses only the regulatory aspects of the medical marijuana industry, not the enforcement of criminal laws. If issues arise with a warrantless inspection against a particular facility, then it may be appropriate to challenge the statute "as applied" to that business. We conclude that Plaintiffs have failed to establish that "no set of circumstances exists under which the [challenged legislation] would be valid." *Salerno*, 481 U.S. at 745, 107 S. Ct. at 2100. The District Court did not err in declining to enjoin § 50-46-329, MCA, and we affirm its ruling on this point.

## CONCLUSION

¶83 For the reasons stated above, the District Court's judgment is affirmed in part and reversed in part. We vacate the District Court's injunctions against the 25-patient physician review provision (§ 50-46-303(10), MCA), the three-patient limit (§ 50-46-308(3), MCA), and the advertising prohibition (§ 50-46-341, MCA), and uphold the constitutionality of those provisions; we declare the remuneration restrictions

44

(§ 50-46-308(4), (6)(a), (b), MCA), to be unconstitutional under the equal protection and due process clauses of the Montana Constitution and permanently enjoin the enforcement of those provisions; and we affirm the District Court in upholding the constitutional validity of the provision prohibiting probationers from becoming registered cardholders for medical marijuana use (§ 50-46-307(4), MCA), and the provision allowing warrantless inspections of medical marijuana providers' businesses by the Department and law enforcement agencies (§ 50-46-329, MCA).

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ ROBERT G. OLSON
District Court Judge Robert G. Olson
sitting for Justice Patricia Cotter

Justice Laurie McKinnon specially concurs and dissents.

¶84    The Court provides an exhaustive substantive due process analysis of the Act after "acknowledging the proverbial 'elephant in the room,'" that "[m]arijuana is a Schedule I Controlled Substance under the federal Controlled Substances Act," which criminalizes its cultivation and distribution.  Opinion, ¶ 13.  The Court correctly notes that the parties are not challenging the Act on the ground that it is preempted by federal law, Opinion,

45

¶ 13, and that "one stated purpose of the Act is to 'provide *legal protections* to persons with debilitating medical conditions who engage in the use of marijuana to alleviate the symptoms of the debilitating medical condition.'" Opinion, ¶ 18 (citation omitted and emphasis added). The Court nevertheless fails to remain focused on this purpose for the legislation—to provide legal protections.

¶85 The State, pursuant to its police powers, may define what is and is not a criminal offense under the laws of Montana, including what constitutes a defense or immunity to a state prosecution. The Court's analysis is led astray by Plaintiff's arguments that are incorrectly premised upon the purpose of the Act as being one of providing *access* to marijuana. Opinion, ¶ 29 ("The careful regulation of access to an otherwise illegal substance for limited use by persons for whom there is little or no other effective alternative serves a legitimate state objective.").

¶86 Marijuana is a Schedule I controlled substance under § 50-32-222(4)(x), MCA. It is considered a dangerous drug under §§ 50-32-101(6), -202, MCA. Distribution includes selling, bartering, exchanging, giving away, or offering to sell, barter, exchange, or give away. Section 45-9-101(1), MCA. The Act "provides exceptions to the illegality of distribution and possession, establishing certain *privileges* for those in compliance with its provisions." *Med. Marijuana Grower's Ass'n v. Corrigan*, 2012 MT 146, ¶ 25, 365 Mont. 346, 281 P.3d 210 (emphasis added).

¶87 In enacting the Act, the Legislature sought to "provide legal protections to persons . . . who engage in the use of marijuana to alleviate the symptoms of [a] debilitating

46

medical condition." Section 50-46-301(2)(a), MCA. The Legislature intended to "allow for the limited cultivation, manufacture, delivery, and possession of marijuana" and "allow individuals to assist a limited number of registered cardholders with the cultivation and manufacture of marijuana." Section 50-46-301(2)(b-c), MCA. Amounts that a registered cardholder may possess are limited, § 50-46-319, MCA, and places of use are similarly restricted, § 50-46-320, MCA. The Act provides that an individual "may not be arrested, prosecuted, or penalized in any manner" solely because "the individual cultivates, manufactures, possesses or transports marijuana in the amounts allowed under this section; or the registered cardholder acquires or uses marijuana." Section 50-46-319(2), MCA. As previously explained by this Court, "the legislature, in its exercise of the State's police powers, decided that it would legalize the limited use of medicinal marijuana while maintaining a prohibition on the sale of medical marijuana." *MCIA I*, ¶ 21.

¶88 States use their inherent police powers to create crimes and also defenses, exceptions, or immunities to those crimes. The "State of Montana has a police power by which it can regulate for the health and safety of its citizens." *Wiser v. State*, 2006 MT 20, ¶ 19, 331 Mont. 28, 129 P.3d 133 (citing *State v. Skurdal*, 235 Mont. 291, 294, 767 P.2d 304, 306 (1988)). Certain statutory provisions create affirmative defenses, exceptions, or immunities to crimes which grant defendants a limited immunity from prosecution. *See generally State v. Archambault*, 2007 MT 26, 336 Mont. 6, 152 P.3d 698. For instance, justifiable use of force provisions, §§ 45-3-101 through -115, MCA, create an affirmative defense to actions that would otherwise constitute crimes. Human trafficking statutes provide another example of immunity and an affirmative

47

defense provided to a child who is a victim. Sections 45-5-709, -710, MCA. Further, by its terms, § 45-8-109(3), MCA, provides a variety of exceptions to a charge of civil disorder, including actions of a peace officer committed during performance of their duties; training in nonviolent civil disobedience techniques; lawful self-defense or defense of others or an activity intended to teach or practice self-defense or self-defense techniques; or training in safe firearm handling and use. Under § 45-6-203, MCA, a person qualified to appraise or audit property for property tax purposes, a person qualified to survey land to delineate boundaries, or a firewarden exercising their duty are excepted from prosecution for criminal trespass by §§ 15-7-139, 70-16-111, and 76-13-116, MCA. Finally, under § 45-8-206(2)(a), MCA, it is a defense to the crime of public display or dissemination of obscene material to minors to have had reasonable cause to believe the minor was 18 years of age.

¶89 Given that marijuana is illegal and the State, in the exercise of its police powers, has carved out a "legal protection" to a state prosecution for violation of Montana's controlled dangerous substance laws, I cannot agree that the statute creates any sort of classification of persons necessary for an equal protection challenge or any substantive right necessary for a substantive due process challenge. The Court states that the Act concerns "a group of persons who all suffer from a debilitating medical condition but are distinguished by the manner in which they may obtain relief. Some may be treated effectively with pharmaceutical drugs" and for others, "marijuana is the sole or most effective treatment." Opinion, ¶ 17. However, the Act simply fails to make any of the distinctions between "groups" which the Court implicitly considers. The Act does not provide marijuana for one group of persons and withhold it from another group; it does

48

not distinguish based upon type of prescription medication; and it does not distinguish based upon who is able to grow marijuana. The Act does, however, provide a benefit or privilege—not a right—to those using marijuana for medical purposes and correspondingly defines, as the State may do, the parameters of a defense for violation of Montana's controlled dangerous substance laws.[1]

¶90 To prevail on an equal protection challenge, the plaintiff "must demonstrate that the law at issue discriminates by impermissibly classifying individuals and treating them differently on the basis of that classification." *Egdorf*, ¶ 15 (citation omitted). A plaintiff must first show that *the challenged law creates a classification* between two classes which are otherwise similarly situated. *Farrier*, ¶ 15. If a plaintiff is unable to show that the challenged law creates such a classification among similarly situated individuals, the inquiry ends and the court need not apply rational basis review. *See Powell*, ¶ 22 ("If the classes at issue are not similarly situated, then the first criteria for proving an equal protection violation is not met and we need look no further."). To the extent the Court finds that the Act creates two groups of persons who are "distinguished by the manner in which they may obtain relief," I disagree. The Act provides limited "legal protections" to

---

[1] Physicians do not "prescribe" marijuana under the Act, but instead provide a "written certification." Section 50-46-310, MCA. Thus, medical marijuana is not a prescribed drug which, if the State prohibited all persons from using, might serve as a basis for a substantive due process challenge. The Court appears to imply medical marijuana is a prescribed drug, the prohibition of which implicates due process concerns. *See* Opinion, ¶ 18.

those who use marijuana for medical purposes; all other persons are using marijuana in violation of state law.[2]

¶91 After correctly concluding that the Act "does not create two legitimate classes for an equal protection challenge," Opinion, ¶ 18, the Court is led afield when it conducts an exhaustive substantive due process analysis. I disagree with the Court's conclusion that Plaintiff's challenges are appropriately analyzed under Montana's due process clause. Opinion, ¶ 19. The Court separates the various provisions of the Act and asks itself whether a legal protection which *benefits* medical marijuana users, is either "arbitrary or unreasonable" or is "rationally related to the recognized legitimate government objectives of the Act." Opinion, ¶ 33.

¶92 Both the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution provide that no person shall be *deprived* of life, liberty, or property without due process of law. "Substantive due process primarily examines the underlying substantive rights and remedies to determine whether restrictions . . . are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute." *Newville*, 267 Mont. at 249, 883 P.2d at 800 (citation omitted); *see also Egdorf*, ¶ 19. The concept of substantive due process refers to "the ability of government to *restrict* the freedom of action (regarding life, liberty, or

---

[2] The potential that some individuals who are eligible to use marijuana under the Act may not be able to grow marijuana themselves or locate a provider does not establish a class, as Plaintiffs argue, and is insufficient to prove an equal protection violation. Again, the purpose of the Act is to provide legal protections. The idea that some medical marijuana users who are unable to grow their own marijuana creates a class for purposes of an equal protection violation is akin to an argument that homeless people create a class because they are unable to raise a defense pursuant to Montana's "castle doctrine," § 45-3-103, MCA.

property) of all persons." Rotunda & Nowak, supra § 15.4(a) at 823-24 (emphasis added). A substantive due process analysis must begin with a careful description of the asserted right, for the "doctrine of judicial self-restraint requires that we exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992). The United States Supreme Court has held that due process specially protects the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment. *Wash. v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997) (citations omitted).

¶93 In explaining the nature of a substantive due process claim, the Supreme Court has:

> [A]lways been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the *Due Process Clause* be subtly transformed into the policy preferences of the Members of this Court.

*Glucksberg*, 521 U.S. at 720, 117 S. Ct. at 2267-68 (internal quotation marks and citations omitted). A "careful description of the asserted fundamental liberty interest" is required and a court must decide whether the asserted liberty interest, as described, is "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

51

sacrificed." *Glucksberg*, 521 U.S. at 720-21, 117 S. Ct. at 2268 (internal quotation marks and citations omitted). In *Glucksberg*, four physicians representing three anonymous, terminally-ill patients challenged a state law prohibiting assisted suicide. They argued that the patients had a fundamental right to choose medical treatment that included assistance in committing suicide. The Court rejected this argument, stating that, in previously holding that individuals have a fundamental "right to refuse unwanted medical treatment," that holding could not "be somehow transmuted into a right to assistance in committing suicide." *Glucksberg*, 521 U.S. at 725-26, 117 S. Ct. at 2270 (citation omitted).

¶94 Applying this analysis, many other courts have held that smoking, using, possessing, or manufacturing marijuana is not a substantive due process right. *See Raich v. Gonzales*, 500 F.3d 850, 864-66 (9th Cir. 2007) (holding that, where the plaintiff's asserted fundamental right was "the right to use *marijuana* to preserve bodily integrity, avoid pain, and preserve her life," that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering" because the alleged right was neither "fundamental" nor "implicit in the concept of ordered liberty") (internal quotation marks and citations omitted); *U.S. v. White Plume*, 447 F.3d 1067, 1074-76 (8th Cir. 2006) (holding that there is no substantive due process right to farm hemp, which, like marijuana, contains tetrahydrocannabinol or THC); *U.S. v. Maas*, 551 F. Supp. 645, 647-48 (D.N.J. 1982) ("Smoking marijuana receives no explicit or implicit constitutional protection. The act of

52

smoking does not involve the important values inherent in questions concerning marriage, procreation, or child rearing. Moreover, its use predominantly as a 'recreational drug' undercuts any argument that its use is as important as, e.g., use of contraceptives") (citations omitted); *U.S. v. Wash.*, 887 F. Supp. 2d 1077, 1102 (D. Mont. 2012).

¶95 We clearly stated in *MCIA I*, that Plaintiffs "cannot seriously contend that they have a fundamental right to medical marijuana when it is still unequivocally illegal under the [federal] Controlled Dangerous Substances Act." *MCIA I*, ¶ 32 (citations omitted). Plaintiffs have no right or claim to "access" marijuana; rather the State has chosen to provide a benefit to those medical marijuana users who comply with the terms of the Act. It cannot reasonably be argued that there is a "substantive right" to possess a substance illegal under both federal and state law.

¶96 I thus disagree with the premise implicit in the Court's approach—namely, that it is appropriate to conduct a substantive due process analysis of a "legal protection" allowed in a state criminal prosecution which has the purpose of providing a benefit or privilege—as compared to a deprivation—to medical marijuana users. These proceedings are not proceedings in which a defendant has attempted to mount a defense to a criminal prosecution by invoking the Act's limited protections. Plaintiffs have alleged constitutional challenges premised on a right of *access* to marijuana. To the extent we have addressed these challenges with a far-reaching constitutional analysis—

inappropriate outside the context of a criminal proceeding invoking the protections of the Act—I am concerned that we have distorted our constitutional jurisprudence.

¶97 In particular, we find that the remuneration restriction violates the equal protection clause, after earlier concluding that an equal protection analysis is undeserved, without even identifying the two classes of persons we considered. We find that a patient who is unable to grow marijuana on her own is set apart. Opinion, ¶ 55. We conclude, without any analysis, that such a prohibition is not encompassed within the Act's legitimate objectives. Opinion, ¶ 55. We cherry pick a provision from the Act that we find offensive and, not surprisingly, are completely unable to support it with an appropriate constitutional analysis. Such a policy preference for members of this Court is precisely the danger inherent in expanding substantive due process to an interest that is neither a substantive nor a fundamental right.

¶98 Marijuana is a controlled dangerous substance under federal and Montana law. The State, pursuant to its police powers, may define what is and is not a criminal offense under state law, including defining what constitutes a defense or immunity to a state prosecution. The Legislature, through the provisions of the 2011 Montana Marijuana Act, chose to carve out and define a defense to a state prosecution for marijuana possession. I would uphold all provisions of the Act as related to this exercise of police power.

/S/ LAURIE McKINNON

54

Justice Jim Rice, dissenting.

¶99 I concur with the Court's Opinion on all issues except for the remuneration provision, from which I dissent. In striking down the provision, the Court fails to properly implement the standards our precedent has imposed for due process review.

¶100 The sheer deference we pay to the legislature under reasonableness review could not be clearer under our precedent: "the purpose of the legislation does not have to appear on the face of the legislation or in the legislative history, but may be *any possible purpose* of which the court can conceive." *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 34, 353 Mont. 265, 222 P.3d 566 (citing *Stratemeyer v. Lincoln County*, 259 Mont. 147, 152, 855 P.2d 506, 509-10 (1993)) (emphasis added). Despite this standard, the Court proceeds to test each provision of the Act not against *any possible purpose*, but against a single purpose to which it latches on and won't let go. We have previously expressly rejected such an approach in the context of rational basis review, which the Court also employs to strike down the remuneration provision. Opinion, ¶ 55. *See Stratemeyer*, 259 Mont. at 151-52, 855 P.2d at 509-10 (holding lower court erred by reasoning "the legislature must provide" a rational basis and that a court "may not speculate" about the legislature's purpose). We should reject this approach once again. When we have determined, as the Court here concedes, that "the legislation in question is related to a legitimate government concern," then the inquiry is simply whether the means chosen by the Legislature to accomplish its objective "are reasonably related to the result sought to be obtained." *Walters v. Flathead Concrete Products*, 2011 MT 45, ¶ 18,

359 Mont. 346, 249 P.3d 913 (citing *Plumb v. Fourth Jud. Dist. Ct.*, 279 Mont. 363, 372, 927 P.2d 1011, 1016 (1996)). This inquiry is the embodiment of judicial restraint and deference.

¶101 Given that marijuana is illegal under federal law, and that the State's interest may be "any possible purpose of which the court can conceive," *Satterlee*, ¶ 34, it requires a particularly uncreative judge indeed to be unable to articulate a legitimate state interest that justifies the remuneration provision. Further, against this first backdrop of federal illegality, there is a second backdrop: the abuses of the drug and of the access provided to it under the I-148 initiative. In response to this chaos, which Plaintiffs acknowledge, the Legislature chose to decisively restrict, limit and constrain all aspects of marijuana availability, and to impose heavy regulation by passing the Act. While the Court ties itself to the generally stated purpose clauses of § 50-46-301, MCA—to which, as stated above, we are not bound—such as providing protections to those with debilitating medical conditions, it fails to acknowledge that the Act provided not one provision that expanded upon or liberalized access to the drug for anyone, as compared to the I-148 initiative. The Act, in its entirety, is a clear constriction of access in response to the abuses under prior law. The Legislature specifically sought to impose new, heavy regulations upon the illegal drug, particularly by "eliminating commercial access," as the State's brief states. This is a legitimate purpose, given the concerns created by commercial access to medical marijuana, such as the need to police, license, and tax commercial goods. The Legislature may well have believed that eliminating commercial

56

access alleviated these concerns, as it has with other home products. *See* § 16-3-201(2), MCA (exempting from regulation the manufacture of beer not intended for sale).

¶102 The Court counters that the remuneration provision will likely drive the business of medical marijuana back to the black market. Opinion, ¶ 54. Perhaps so, but the proper inquiry does not permit the Court to entertain such policy speculations, and, in fact, as properly applied, mandates the Court do just the opposite: speculation and presumption is required in favor of *upholding* the provision. *See Davis v. Union Pacific R.R.*, 282 Mont. 233, 240, 937 P.2d 27, 31 (1997) ("[E]very possible presumption must be indulged in favor of the constitutionality of the legislative act."). Employing such a presumption here, the remuneration provision certainly seems likely to eliminate commercial access and alleviate the State's concerns for purposes of due process analysis, as well as justifying its enactment and differential treatment of the purported similarly situated classes under equal protection.

¶103 I would uphold all of the provisions of the Act.

/S/ JIM RICE

Justice Michael E Wheat, dissenting.

¶104 Except as to the Majority's conclusion regarding the remuneration provisions, I respectfully dissent from the Majority's decision in this case.

¶105 At the outset, I note that I-148 was passed by a majority of Montana voters who clearly wanted medical marijuana to be made available for those who need it to treat medical conditions. This was and is the underlying purpose of the law. Shortcomings in the original law subsequently lead to abuses that required the Legislature to step in and impose restrictions to control the abuses. The real question in this case is whether the statutory restrictions went too far and impaired the rights of those who need medical marijuana by severely limiting or eliminating their access to a drug made medicinally legal under the Act. The answer is determined by how one views the underlying purpose of the Act: whether it is to provide "access" to a medicinal drug, or to provide "protection" to those engaged in the business (producers, distributors, and consumers), because marijuana remains federally illegal. So, which analytical lens one uses will determine the outcome. While I recognize a need for regulatory framework, I believe the State has gone too far in this case by creating a law that focuses so heavily on curbing the abuses of medicinal marijuana that it violates the rights of patients by so severely limiting or eliminating access to it, which ultimately destroys the law's purpose. I disagree with the Majority on nearly every issue brought before this Court. I would affirm the District Court's decision to enjoin certain provisions of the Act, but I would go further and also enjoin the prohibition of medical marijuana use by probationers and the warrantless search provisions.

¶106 It is noteworthy that the landscape of the law regarding medical and recreational use of marijuana has changed significantly since this case began. Currently, twenty-three

states and the District of Columbia have statutes that allow for the legal use of marijuana for medicinal purposes, and four western states have passed laws that allow for legal recreational use of the drug. Opinion, ¶ 13, n.2. I believe that many more changes are coming in this area of law based on society's evolving understanding of marijuana, including its medical benefits.

### The 25-Patient Certification Limit on Physicians

¶107 The District Court found that the Board of Medical Examiners reported no problems with medical marijuana certifications throughout the pendency of this action, even though the certification-limit provision was never in effect. The court heard testimony from State officials who testified that no problems exist, and further the State lacked any rationale to justify the limit. Opinion, ¶ 36. The court also determined that the Board possesses the authority to discipline doctors who violate the standard of care, that the Board had already made changes to completely disallow certification "exclusively by telemedicine," and thus the Board is fully capable of regulating physicians in the State. Opinion, ¶ 36.

¶108 I agree with the District Court's conclusion that the evidence regarding the ability of the Board to self-regulate and the lack of the State's rationale to justify a 25-patient limit demonstrates that the provision is unnecessary, and further it is arbitrary. Under rational basis review this provision must be reasonable, not arbitrary, and bear a fair and substantial relation to the object of the legislation. *Powder River Cnty.*, ¶ 79. It is my belief that the object of medical marijuana legislation is to provide legal medicinal access

to marijuana. This government regulation reaches beyond a substantial relation to the object of the legislation and instead sets a number so arbitrarily low that the object is stymied. By definition, an arbitrary act is one that is made without consideration or regard for facts, circumstances, fixed rules, or procedures. *Black's Law Dictionary*, *supra*, at 125. This limit fails to consider the fact that the Board already eliminated the telemedicine certification process, which essentially resolved the prior certification problems. This limit fails to consider the circumstance of the Board's continued authority and ability to properly regulate and discipline doctors for violations of the standard of care in all avenues of medicine. Finally, there is no indication that the Legislature followed any procedure to determine a patient-certification number that would substantially relate to providing regulated access to medicinal marijuana. Instead, the Legislature chose an arbitrary number of 25 that is not reasonable when balanced against the purpose of the legislation. *Egdorf*, ¶ 19. I therefore conclude that this provision of the law fails rational basis review and I would affirm the District Court's injunction of the 25-patient limit on physicians.

**Commercial Provisions**

¶109 At the outset, I would decline to split the provisions as the Majority did because both types of commercial provisions, not just the remuneration provisions, serve to limit the access of medical marijuana to a distinct class of persons. Opinion, ¶ 47. The remuneration restrictions and the three-patient commercial limit both impose "'peculiar disabilities upon [a] class of persons arbitrarily selected from a larger number of persons,

60

all of whom stand in the same relation to privileges conferred or disabilities imposed.'"" *Kottel*, ¶ 55 (quoting *Leuthold*, 100 Mont. at 105, 47 P.2d at 45). The District Court determined that the effect of these provisions renders access to medical marijuana nearly impossible for people with the most debilitating conditions. I agree with the District Court that the commercial provisions create different classes of persons by imposing different burdens on those who can provide medical marijuana for themselves and those who must purchase it in the marketplace, which then fail rational basis review. I agree with the conclusion the Majority reaches in respect to the remuneration decision. Opinion, ¶¶ 53-56. However, as stated, I would choose to analyze both commercial provisions as one because I believe both restrictions implicate equal protection.

¶110 As written, the statutes create an absurd result where those with the most debilitating medical conditions will have no access to medical marijuana because they will not be able to grow it due to inability, cannot pay someone else to grow it, and will not likely be able to find someone else to do so under the advertising prohibitions. As the Majority notes, this class of persons will likely be forced into the black market to acquire marijuana, creating business for the criminal enterprise the State seeks to avoid under the Act. Opinion, ¶ 54. Here, I agree with the District Court that the statutes fail because as written "[a] statute which is directly contrary to its justification cannot be rationally related to that justification." Because the commercial provisions fail to protect those persons with the most debilitating conditions, I would likewise enjoin these commercial provisions as they violate equal protection of the laws.

61

**Advertising Ban**

¶111 I disagree with the Majority's application of the *Central Hudson* test. Opinion, ¶¶ 64-67. I would apply strict scrutiny because I agree with the District Court's conclusion that § 341 of the Act "renders the 'playing field' for discussion of the pros and cons of medical marijuana completely uneven." I am not convinced by the Majority's attempt to limit the language of the Act to a plain-language analysis to establish a commercial-speech basis for allowing the provision. Opinion, ¶¶ 62-63. Instead, I find the language of the statute overbroad and vague. While the Majority reaches a narrow interpretation of the language, I believe it is just as straightforward to come to the opposite conclusion that broad restrictions on political and educational speech have occurred under this law. Article II, section 7 of the Montana Constitution states: "No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty." Because the language of § 341 creates content-based restrictions as written, it fails an examination under strict scrutiny, which is the standard that should be applied. I would affirm the District Court and enjoin § 341.

**Prohibition on Probationer Use**

¶112 I would reverse the District Court's determination that the prohibition on probationer use under § 50-46-307(4), MCA, is constitutional because the State has shown a rational basis for the provision. In my view, the law undermines the purpose of the Act because it clearly bars a class of persons from access to a legally-recognized

medicine: medical marijuana. Under the law, all sentences imposed by the district courts include a prohibition on medical marijuana use, which precludes the district court's ability to apply a case-by-case "nexus" analysis under *Ashby*. As written, the effect of the prohibition is unconstitutional because the blanket ban violates equal protection of the laws, by classifying persons for different treatment, and it should be analyzed as such. I would enjoin this provision.

**Warrantless Searches**

¶113 I would reverse the District Court and enjoin the provisions allowing warrantless searches under § 50-46-329, MCA, because these provisions provide carte blanche to State and local law enforcement. I would uphold Montana privacy rights and use this opportunity to strengthen our State's privacy rights. The inspection procedures under the Act result in a constant threat to potential business owners that law enforcement can enter their premises and gather and develop evidence. I believe this provision will only create hostility and enhance the State's view of medical marijuana as a criminal endeavor rather than a medicine available to those in need. Ultimately, the search provisions would be better served by providing for warrantless administrative inspections to be carried out only by a State agency with no direct involvement by local or State law enforcement.

**Conclusion**

¶114 I agree with the Majority that the remuneration restrictions do not bear a fair and substantial relation to the object of the legislation, and furthermore the provisions violate the equal protection clause of the Montana Constitution. Opinion, ¶¶ 53-56. I disagree

63

with the Majority on all of the remaining issues in this case and believe the Majority has erred in its interpretation of the statutes. For the reasons stated above, I dissent.

/S/ MICHAEL E WHEAT