# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2024

Lyle W. Cayce
Clerk

No. 24-60086

Clarence Cocroft; Tru Source Medical Cannabis, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Chris Graham, *in his official capacity as the Commissioner of the Mississippi Department of Revenue*; Riley Nelson, *in his official capacity as the Chief of Enforcement of the Mississippi Alcoholic Beverage Control Bureau*; Doctor Daniel P. Edney, *in his official capacity as State Health Officer for the State of Mississippi Department of Health*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:23-CV-431

---

Before Smith, Clement, and Higginson, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Clarence Cocroft and his medical-marihuana dispensary, Tru Source Medical Cannabis, L.L.C., appeal a judgment of dismissal of their First Amendment challenge to Mississippi's near-total restriction on the advertising of medical marihuana. The plaintiffs seek declaratory and injunctive relief against several state defendants in their official capacities. The plain-

tiffs contend that the First Amendment protects their right to engage in medical-marihuana advertising because Mississippi law permits the underlying commercial transactions.

This case presents an issue of first impression in our Circuit. The parties agree that the speech at issue is commercial and that the *Central Hudson* test governs our analysis. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). As a threshold matter, commercial speech receives no First Amendment protection if the underlying commercial conduct is illegal. The Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, prohibits activities involving marihuana—including activities involving medical marihuana—nationwide. And the Supremacy Clause means that the CSA is the law in Mississippi regardless of what state law might say. Marihuana is therefore illegal in Mississippi, and the state faces no constitutional obstacle to restricting commercial speech relating to unlawful transactions. Accordingly, we affirm the judgment of dismissal.

## I.

Since 1970, the federal CSA has prohibited the manufacture, distribution, dispensing, and possession of marihuana. *Id.* §§ 812(Schedule I)(c)(10), 841(a)(1), 844(a). That law additionally criminalizes the advertising of marihuana. *Id.* §§ 812(Schedule I)(c)(10), 843(c).

In 2022, Mississippi enacted the "Mississippi Medical Cannabis Act," MISS. CODE ANN. § 41-137-1 *et seq.*, which authorizes the sale and use of marihuana for certain medicinal purposes. The Act creates an extensive regulatory and licensing framework, and it charges the Mississippi Department of Health ("MDOH") and the Mississippi Department of Revenue ("MDOR") with administering the program. MISS. CODE ANN. § 41-137-7. The Act requires both Departments, in that role, to promulgate rules and regulations, including "[r]estrictions on the advertising, signage,

and display of medical cannabis[.]" *Id.* § 41-137-41(1)(d)(x). The Act specifically permits some advertising, though. The Departments' rules

> may not prevent appropriate signs on the property of a dispensary, listings in business directories, including phone books, listings in cannabis-related or medical publications, display of cannabis in company logos and other branding activities, display on dispensary websites of pictures of products that the dispensary sells, or the sponsorship of health or not-for-profit charity or advocacy events[.]

*Id.*

MDOH has exercised its regulatory authority to the full extent permitted under the Act; its rules prohibit medical-marihuana "advertising and marketing in any media, including but not limited to" broadcast, electronic, and print media. 15 Miss. Admin. Code Pt. 22, Subpt. 9, R. 9.1.1. The prohibition also extends to mass text and email communications, displays of medical cannabis products "in windows or public view," advertisements "that can be viewable or otherwise perceived as a public space," and solicited or paid reviews, testimonies, or endorsements from patients, caregivers, or practitioners. *Id.* The MDOH rules do, however, authorize licensed medical cannabis establishments "to participate in [specified] branding activities . . . in order to publicize their businesses." *Id.* Pt. 22, Subpt. 9, R. 9.2.1. "Permissible branding activities include:"

> 1. Establishment of a website and/or social media presence that provides general information on the licensed entity's contact information, retail dispensing locations, and a list of products available;
>
> 2. Listings in business directories (inclusive of phone books, cannabis-related or medical publications);
>
> 3. Display of cannabis in company logos and other branding

No. 24-60086

activities; and,

4. Sponsorships of health or not-for-profit charity or advocacy events.

*Id.* Pt. 22, Subpt. 9, R. 9.2.2.[1]

The plaintiffs allege that they are injured by Mississippi's rules because they cannot advertise "in ways that allow them to effectively reach new customers," "inform the public about Mississippi's medical marijuana program," and "inform the public about Tru Source's location, products, and prices." Were it not for these restrictions, the plaintiffs maintain, they would advertise through print, broadcast, social, and other media. The plaintiffs contend that the First Amendment's Free Speech Clause protects their right to engage in such advertising because Mississippi law has authorized the underlying commercial transactions.

The district court granted the defendants' Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim. Evaluating the case under *Central Hudson*, the court held that medical-marihuana advertising does not qualify for First Amendment protection because federal law criminalizes the underlying transactions.

## II.

"We review *de novo* a district court's dismissal under Rule 12(b)(6)." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020) (quotation and citation omitted). "We accept all well-pleaded facts as true, construing all reasonable inferences in the light most favorable to the plaintiff. But we do

---

[1] The only form of advertising that MDOH permits that the Act (arguably) does not require it to allow is a dispensary social-media presence for providing general information. *Compare* Miss. Code Ann. § 41-137-41(1)(d)(x) *with* 15 Miss. Admin. Code Pt. 22, Subpt. 9, R. 9.2.2.

4

not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 469 (5th Cir. 2023) (cleaned up).

"It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (cleaned up). Thus, "the State ha[s] the burden to prove all elements of the *Central Hudson* test." *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

### III.

In *Central Hudson*, the Court set forth the four-prong test for evaluating the regulation of commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566.

This case boils down to whether medical-marihuana transactions are "lawful" commercial activity in Mississippi. Supreme Court precedent teaches that the lawfulness of the underlying commercial activity is a "threshold matter" in determining whether related commercial speech comes within the ambit of the First Amendment. *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) ("Under [the *Central Hudson*] test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First

Amendment."); *and Cent. Hudson*, 447 U.S. at 566 (Commercial speech "*at least* must concern lawful activity" to be protected.) (emphasis added). Because unlawfulness is dispositive, the most natural reading of *Central Hudson*'s first prong makes quick work of this case: Marihuana transactions are illegal in every state by virtue of federal law, so no commercial speech proposing such transactions "concern[s] lawful activity." *Cent. Hudson*, 447 U.S. at 566. Thus, the First Amendment poses no obstacle to a ban on such speech.

The crux of the plaintiffs' contention to the contrary is that, because *Mississippi* has not exercised its power to prohibit medical marihuana, the First Amendment does not authorize *Mississippi* to exercise its "concomitant power" to regulate commercial speech proposing medical-marihuana transactions. The plaintiffs thus advance a kind of "same-sovereign" theory of commercial-speech regulation: Only the sovereign that enacted the law regulating the underlying conduct has the power to enact laws restricting related commercial speech. It is the exercise of the state's own "power to prohibit a product," the plaintiffs say, that triggers its "limited power to prohibit speech about that product." The plaintiffs urge a reading of *Central Hudson* that does not merely ask, "Is this product illegal?" but instead inquires, "Has the jurisdiction that is banning this commercial speech first prohibited the commercial conduct it proposes?" The state defendants counter that it is the *status* of illegality in the relevant jurisdiction—not the *identity* of the sovereign that enacted the prohibition—that counts under *Central Hudson*.

## A.

Plaintiffs' same-sovereign theory is unsupported by law. First, *Central Hudson* lends no support to that notion. "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." *Cent. Hudson*, 447 U.S. at 566. That reads as a

status-based inquiry: "Is the status of the underlying activity legal?" Supreme Court decisions applying *Central Hudson* frame the question similarly.[2]

The sole Supreme Court opinion that plaintiffs cite for their theory is not to the contrary. In *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), the Court invalidated a Rhode Island statute that banned price advertising for alcoholic beverages. Justice Stevens, in a plurality opinion speaking for himself and Justices Kennedy, Souter, and Ginsburg, wrote that commercial speech cases have "explained that the State's power to regulate commercial transactions justifies its concomitant power to regulate commercial speech that is 'linked inextricably' to those transactions."[3] The plaintiffs take this to mean that a state cannot regulate commercial speech unless *its own state legislature* has first regulated the underlying conduct; a state's own conduct regulation is the requisite justification for its "concomitant" power to enact speech restrictions.

But that is an unlikely reading for several reasons. First, neither of the two cases Justice Stevens cited supports the plaintiffs' interpretation. *See Friedman*, 440 U.S. at 10 n.9; *Ohralik*, 436 U.S. at 456. Second, the facts of *44 Liquormart* involved a state-level speech restriction related to transactions that were legal under both federal and state law; the identity of the sovereign regulating the commerce was not at issue. Finally, Justice Stevens's opinion

---

[2] *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 69 (1983) ("The State may . . . prohibit commercial speech related to illegal behavior."); *see also Bd. of Trs. of State Univ. v. Fox*, 492 U.S. 469, 475 (1989); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 183 (1999); *Thompson*, 535 U.S. at 367 (all citing *Central Hudson*'s status-based legality inquiry without suggesting any same-sovereign rule).

[3] *44 Liquormart*, 517 U.S. at 499 (plurality opinion of Stevens, J., joined by Kennedy, Souter, and Ginsburg, JJ.) (citing *Friedman v. Rogers*, 440 U.S. 1, 10, n.9 (1979); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)).

in *44 Liquormart* spoke for only four Justices, and no subsequent Supreme Court majority has cited his opinion to suggest that a state's power to regulate commercial speech is "concomitant" to its own power to regulate transactions.

The plaintiffs do not fare any better with caselaw from other circuits. Of the six cases the plaintiffs cite from sister circuits, none turns on the issue of whether the state itself must enact the underlying criminal law as a prerequisite to regulating the related commercial speech. The closest those cases come to supporting the plaintiffs' theory is merely to quote Justice Stevens's line from *44 Liquormart* without any additional explanation.[4] None of them addresses the question whether a state can regulate comercial speech related to federally illegal transactions that the state has not separately prohibited. And the plaintiffs' single favorable reported state case—involving, as here, advertising restrictions on marihuana in a state permitting marihuana against a backdrop of federal illegality—did not even mention *44 Liquormart* or the concomitant-power theory in its prong one analysis. *See Seattle Events v. State*, 512 P.3d 926, 934–35 (Wash. Ct. App. 2022) (applying

---

[4] *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1142 (D.C. Cir. 2009) (cited Justice Stevens's "concomitant" quotation in *44 Liquormart*; the outcome did not turn on which sovereign regulated the underlying conduct); *United States v. Wenger*, 427 F.3d 840, 846 (10th Cir. 2005) (quoted Justice Stevens's line from *44 Liquormart* but included no additional language suggesting a same-sovereign requirement; the case did not turn on such a requirement); *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 94–95 (2d Cir. 2010) (included a bare recitation of the *44 Liquormart* line but did not turn on which sovereign regulated the underlying conduct); *Campbell v. Robb*, 162 F. App'x 460, 469 (6th Cir. 2006) (quoted Justice Stevens in *44 Liquormart*; did not turn on the same-sovereign question); *see also Katt v. Dykhouse*, 983 F.2d 690 (6th Cir. 1992) (did not turn on whether the state itself made the commercial conduct illegal); *Okla. Telecasters Ass'n v. Crisp*, 699 F.2d 490 (10th Cir. 1983) (merely held, in relevant part, that advertising restrictions are not immune from First Amendment scrutiny just because the state has broad power to regulate the underlying transactions), *rev'd on other grounds sub nom. Cap. Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984).

*Central Hudson* prong one).

In the final analysis, a state's ability to ban commercial speech is "concomitant" to the unlawful status of the underlying transaction. It is constitutionally irrelevant whether the state or the federal government imposed the status of illegality.

## B.

Contrary to the plaintiffs' assertions, *Bigelow v. Virginia*, 421 U.S. 809 (1975), does not change that analysis. *Bigelow* merely focuses the inquiry, teaching that the relevant legal status is in the place where the advertised transaction would occur. Thus, in *Bigelow*, the Court held that Virginia could not ban advertising within its borders for abortion-related transactions that would occur in New York because those transactions were legal in New York. "[A State] may not, under the guise of exercising internal police powers, bar a citizen of another State from disseminating information about an activity that is legal in that State." *Id.* at 824–25.

*Bigelow* therefore clarifies the precise question in *Central Hudson* prong one: whether a proposed transaction is legal under the laws of the jurisdiction where it would occur. That necessarily and especially includes federal law because federal law is the law of *every* United States jurisdiction.[5] Here, Mississippi has restricted advertisements for transactions that are illegal under federal law, which is the law of Mississippi.

Plaintiffs resist such an interpretation of *Bigelow*, citing *Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir. 1983) (en banc). That case involved a statewide restriction on liquor advertising in a state with both "wet" and

---

[5] U.S. CONST. art. VI, cl. 2 (The Constitution, valid treaties, and valid federal laws "shall be the supreme Law of the Land.").

"dry" counties. We rejected the state's argument that liquor advertising could be banned on the ground that it "promote[s] illegal activity." *Id.* at 742–43. But *Dunagin* does not alter the meaning of *Bigelow*; it merely demonstrates that *Bigelow* applies to conflicting county, in addition to state, laws. Like *Bigelow* and unlike this case, *Dunagin* addressed a statewide advertising restriction covering transactions that were legal under federal, state, and (some) county law. *Id.* There was no federal (or, in *Dunagin*, no state) backdrop of illegality as there is here.

The plaintiffs also glean support from a First Circuit case and a Ninth Circuit case applying *Bigelow*. The former involved an advertisement that "promotes activity which has been determined to be criminal in all jurisdictions." *New England Accessories Trade Ass'n, Inc. v. City of Nashua*, 679 F.2d 1, 3 (1st Cir. 1982). The plaintiffs seize on a hypothetical that appeared in *dictum*: "If New York, or some other state, decided to legalize the sale and use of marijuana, New Hampshire would have greater difficulty under Bigelow [*sic*] prohibiting an advertisement suggesting that the Big Apple was the place to get high on marijuana. But that is not the situation before us." *Id.*, 679 F.2d at 4. The *New England Accessories* court merely purported to apply *Bigelow*, and it did not even mention the backdrop of federal marihuana illegality. Neither that case nor *Bigelow* involved state authorization of something illegal nationwide.

The Ninth Circuit case involved advertisements for drug paraphernalia and conducted a straightforward application of *Bigelow* in the context of conflicting laws among different states: "[T]he advertiser who proposes a transaction in a state where the transaction is legal is promoting a legal activity. Its speech deserves First Amendment protection." *Wash. Mercantile Ass'n v. Williams*, 733 F.2d 687, 691 (9th Cir. 1984). Again, the court merely restated the rule in *Bigelow* that governs conflicting laws among different states.

No. 24-60086

Under *Central Hudson*, viewed through the lens of *Bigelow*, a state can ban commercial speech proposing transactions within the state wherever those transactions violate the law—including federal law, which is the "supreme Law of the Land." U.S. CONST. art. VI, cl. 2.

## C.

Two reported state cases have squarely addressed the question. The first supports the defendants' position. *See Mont. Cannabis Indus. Ass'n v. State*, 368 P.3d 1131 (Mont. 2016). As here, the plaintiffs challenged a state prohibition on medical-marihuana advertising where the state had passed a law authorizing medical-marihuana transactions. The court held that the law did not violate the First Amendment because the use or possession of medical marihuana is not a "lawful activity" for purposes of *Central Hudson*. *Id.* at 1150. The court employed a straightforward Supremacy Clause analysis to evaluate the legal status of marihuana in Montana. *Id.* at 1149–50. Congress has criminalized marihuana, the court reasoned, and federal law is supreme over any state law to the contrary. *Id.* at 1150. "That a person possesses or uses medical marijuana in compliance with the laws of his or her state of residence provides no defense under the federal law." *Id.* (citing *Gonzales v. Raich*, 545 U.S. 1, 29 (2005)). The court concluded that "an activity that is not permitted by federal law—even if permitted by state law—is not a 'lawful activity' within the meaning of *Central Hudson*'s first factor." *Id.*

In *Seattle Events*, the court reached the opposite result, holding that the licensed sale of marihuana is "lawful" for purposes of *Central Hudson* where states have permitted its sale. The court's brief analysis was largely *ipse dixit*. First, the court marshaled no Supreme Court authority for its holding, citing only *dictum* from *New England Accessories* and language from *Williams* as the "existing case law support[ing]" its conclusion. *Seattle Events*, 512 P.3d at 935. Second, the court never engaged with the Montana

11

court's reasoning. Rather, it distinguished *Montana Cannabis* on the ground that that case involved only a federal constitutional challenge, whereas the Washington plaintiffs brought both federal and state constitutional claims. *Id.* The *Seattle Events* court ended its analysis of prong one in conclusionary fashion: "Because existing case law supports extending constitutional protections to advertising for activities that are legal in the state where the transaction would occur, we hold that restricted marijuana advertising from licensed retailers in Washington concerns lawful activity." *Id.* (citing *New England Accessories* and *Williams*).

The reasoning in *Seattle Events* is not persuasive. For example, the court observes at one point that "[t]he sale of marijuana remains illegal under federal law," but it proceeds to hold that "the licensed sale of marijuana is legal in Washington." *Id.* Putting the First Amendment issue aside, those two statements are incongruous with the Supremacy Clause. Furthermore, the sole reason the court felt free to disregard the logic of *Montana Cannabis* was because that case involved only a federal First Amendment claim. That explanation makes little sense, however, because the Washington court explained that the same *Central Hudson* analysis applied to both the state and federal claims in that case. *Id.* at 932. Thus, the *Seattle Events* court undercut the very basis on which it distinguished *Montana Cannabis*, and it failed to grapple with whether an activity that is illegal nationwide can qualify as a "lawful activity" in any state.

The reasoning in *Montana Cannabis*, which the district court adopted here, is persuasive and dispositive. That logic proceeds in three steps:

(1) Under *Central Hudson*, the First Amendment permits a state to ban advertising of commercial activity that is illegal within that

No. 24-60086

state.[6]

(2) Marihuana, including medical marihuana, is illegal in every state because it is illegal under federal law; that some states permit marihuana as a matter of state policy does not alter the nationwide application of federal law.[7]

(3) Therefore, the First Amendment does not preclude state bans on marihuana advertising.

The plaintiffs attack this reasoning as a Supremacy Clause analysis instead of an application of First Amendment principles. Not so. They are well-settled *First Amendment* principles that implicate the Supremacy Clause in this case. Those principles permit states to ban commercial speech about activities that are not "lawful." *Cent. Hudson*, 447 U.S. at 566. And the Supremacy Clause defines what is "lawful" where a valid federal law is involved. U.S. Const. art. VI, cl. 2.

Here, the federal CSA prohibits marihuana (including medical marihuana) in every state. The Supreme Court confirmed in *Gonzales v. Raich* that the CSA is a valid exercise of Congress's power under the Commerce Clause, and it held that the Supremacy Clause "unambiguously provides" that the federal CSA governs even in states with more permissive marihuana laws.[8] Marihuana is illegal in every United States jurisdiction, "any Thing in

---

[6] *Cent. Hudson*, 447 U.S. at 566; *Bigelow*, 421 U.S. at 824–25.

[7] U.S. Const. art. VI, cl. 2; *Raich*, 545 U.S. at 27–29 (holding that the federal CSA validly criminalizes marihuana used for "*any* purpose" nationwide) (emphasis in original).

[8] *Raich*, 545 U.S. at 27–29. Although plaintiffs suggest that marihuana is "effectively legal at the federal level," no such category of "effectively legal" exists. Congressional funding and executive branch enforcement decisions do not alter the illegality of marihuana under the CSA. *See, e.g., United States v. McIntosh*, 833 F.3d 1163, 1179 n.5 (9th Cir. 2016) (O'Scannlain, J.) (Despite Congress' funding choices, "[t]he CSA prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who pos-

No. 24-60086

the . . . Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Because marihuana is not a "lawful activity" in Mississippi, the First Amendment poses no obstacle to the state's commercial-speech restrictions.

*   *   *   *   *

To qualify for First Amendment protection, commercial speech must "at least concern lawful activity." *Cent. Hudson*, 447 U.S. at 566. Federal law criminalizes medical marihuana in every state—including Mississippi. Therefore, Mississippi's commercial-speech restrictions do not offend the First Amendment.

The judgment of dismissal is AFFIRMED.

_____

sesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime.").